591 So.2d 431 (1991)
Jerry G. ADAMS
v.
Sharron H. ADAMS.
No. 89-CA-1112.
Supreme Court of Mississippi.
December 4, 1991.
*432 Richard E. Stratton, III, Brookhaven, for appellant.
Robert O. Allen, Allen Allen & Boutwell, Brookhaven, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and PITTMAN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
On April 24, 1984, the Chancery Court of Lincoln County entered a judgment divorcing Jerry G. Adams from Sharron H. Adams on allegations of irreconcilable differences. The court granted custody of the two minor children, Shelley Lane Adams, age 14, and Jerry Gene Adams, II, age 11, to their mother, Sharron Adams. Jerry Adams was ordered to provide support and maintenance of the children in the amount of $1,000.00 per child per month and the support payments were to continue until a child married, became self-supporting or reached the age of 21, whichever occurred first. Adams was to continue support of any child who reached the age of 21 but was pursuing a college education toward an undergraduate degree or an advanced degree. In addition, Adams was responsible for all tuition costs and other expenses necessary in securing such a degree, but he was allowed to claim one child as a dependent for income tax purposes.
Jerry Adams filed a petition on January 8, 1985, to modify the child support and maintenance award of $1,000.00 per month per child. The lower court entered an order suspending $500.00 or $250.00 per child per month for a six (6) month period. At the end of that period, however, the $3,000.00 in suspended payments became due and payable to Sharron Adams.
Adams filed a second petition to modify the child support and maintenance award seeking a reduction of child support money and a modification of his obligation for college education. The petition was filed on August 7, 1986, and was dismissed for failure to prosecute.
On July 26, 1988, Sharron Adams filed a petition seeking a citation for contempt and judgments for past due child support payments in the amount of $13,500.00 in addition to the $3,000.00 which Mr. Adams had failed to pay. Adams filed a motion on August 19, 1988, to restore to the court's active docket his petition of August 7, 1986. The petitions were consolidated and the lower court entertained hearings beginning March 2, 1989, and concluding on August 8, 1989.
Adams has appealed from the judgment of the lower court and presents two issues on direct appeal:
I. THE LOWER COURT WAS MANIFESTLY WRONG IN FAILING TO REDUCE APPELLANT'S CHILD SUPPORT AND MAINTENANCE AWARDS TO COMPORT WITH HIS EARNING CAPACITY, HIS AWARDS BEING AGAINST THE OVERWHELMING GREAT WEIGHT OF THE EVIDENCE.

II. THE LOWER COURT ERRED IN AWARDING APPELLEE ATTORNEY'S FEES.

*433 Sharron H. Adams cross-appeals and raises four issues on that appeal:
I. THE LOWER COURT WAS MANIFESTLY WRONG IN REDUCING CROSS APPELLEE'S CHILD SUPPORT OBLIGATIONS INASMUCH AS NO SUBSTANTIAL AND MATERIAL CHANGE OF CIRCUMSTANCES WAS SHOWN.

II. THE LOWER COURT BELOW WAS MANIFESTLY INCORRECT IN FAILING TO AWARD INTEREST ON PAST DUE CHILD SUPPORT PAYMENTS.

III. THE LOWER COURT WAS MANIFESTLY INCORRECT IN GIVING CREDIT TO JERRY G. ADAMS FOR $1,301.24 FOR SUMS DEPOSITED IN HIS DAUGHTER'S ACCOUNT.

IV. THE LOWER COURT WHILE CORRECT IN AWARDING CROSS APPELLANT ATTORNEY'S FEES WAS INCORRECT IN NOT AWARDING FULL AMOUNT OF FEES REQUESTED.

Some of the issues overlap and discussion of an issue on direct appeal may also include an issue on cross appeal.

FACTS
At the time of his divorce from Sharron Adams and until August 1989, Jerry Adams owned and operated a mobile home business in Brookhaven, Mississippi, known as Adams Mobile Homes. After selling the mobile home business, Adams purchased a used car sales business which he operated as Ronny Smith Auto Sales, also in Brookhaven.
Adams testified that the mobile home business declined sharply following his divorce. According to him, the combined strain of the lack of business, the continuing expense of operating the business, insurance and taxes on the property he owned, his long-term debt, his personal living expenses, and the cost of supporting his children have left him dependent on a girl friend for food, supplies, shelter, utilities, cash in a bank account and most of his living expenses.
The Chancellor had the benefit of the following financial information regarding Jerry G. Adams, prior to making his determination:

 Owner's Equity in Business Cash on Hand in Business
 1986 $116,900.71 plus $63,000.00
 1987 $125,275.12 plus $89,321.00
 1988 $ 25,034.60 minus $39,637.00 (12/31/87)
 Adjusted Gross Income Assets
 1984 $28,568.00 $ 377,358.00
 1985 $32,077.00 $ 718,505.00
 1986 $ 2,966.00 $1,696,338.00
 1987 $54,628.00 $1,238,673.00
 1988 $ 571,732.00
 Net Worth IRA Account
 1984 $ 9,000.00
 1985 $ 535,400.00 $13,000.00
 1986 $1,009,408.00
 1987 $1,016,043.00 $24,984.00
 1988 $ 285,404.00 $29,232.00

*434 After the hearing on the merits of each claim and presentment of evidence including the above financial information, the Chancellor issued an oral opinion and findings of fact. His findings of fact follow:
It appears from the testimony that, substantially, Mr. Adams has paid in the neighborhood of $1,500.00 per month for the two children, down until the date that Shelley went to college, which was last September. September of 1988. At that time, he took on her full college support and continued to pay the amount of $750 instead of the $1,000.00 amount to Mrs. Adams. Mrs. Adams, of course, says that she's entitled to the full amount of child support ordered by the Court, plus interest for any amount unpaid, plus attorney's fees for services of her attorney in getting this matter properly before the Court for its determination.
Now, this is a case, I think, where you can take figures and make them justify almost any position that a person may take. Mr. Stratton has taken the figures and made it look like Mr. Adams is as poor as Job's turkey. Mr. Allen has taken the figures and makes it look like Mr. Adams has represented himself to be as rich as a goose. Got all kinds of assets, and, so, somewhere in between those two extremes, I think, lies the present financial situation of Mr. Adams. He's got a lot of stuff in his name, we can say that for him, and he wheels and deals as it's already been referred to in the matter before us. And property values go up, and they come down. But the question I have to decide is where, along this broad spectrum of financial endeavor lies the answer to the child support problem. Mrs. Adams has sold the house in which they lived and has realized something around a hundred and ten thousand dollars, that she has very wisely placed on savings and from which an earning comes each month  not in the way of dividends, but in the way of accrued interest or accumulation, which is certainly something that she will have to use if and when her financial condition requires it. She has not had to sell anything in order to get monthly support. She's managed to make it on what Mr. Adams has given her, and he manages to continue having every kind of account you can conceive of, umbrella and other wise, where all you have to do is the bank will put money in an account when a child writes a check, if the check is not good, and the bank will put the money in it to cover it ...
Well, I think this, and this is my finding. That the original amount of $1,000.00 per month per child, where a payment of $2,000.00 per month beginning in May of 1986, was ordered, that amount of $2,000.00 per month beginning in May of 1986, will be reduced to the sum of $1,750.00 per month, which means that the allocation to each child will be reduced by $125.00. That there will be $875.00 for Chip's support, and $875.00 for Shelley's support... .

DISCUSSION

I. and II.

(DIRECT APPEAL)
Adams contends: (1) that the lower court was manifestly wrong in failing to reduce child support and maintenance awards in line with his earning capacity, and (2) that the lower court erred in awarding appellee attorney's fees. Ms. Adams, on cross appeal, contends: (1) that the lower court erred in reducing Adams' child support payments in any amount, since there was no substantial change in circumstances, and (2) that the lower court correctly awarded Ms. Adams attorney's fees but erred in not awarding the full amount of the fees requested.
Of course, the standard is well established and almost elementary that the Court will not disturb the finding of the chancellor unless he has abused his discretion and was manifestly wrong, clearly erroneous or applied an erroneous legal standard. Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983) (citing Anderson v. Watkins, 208 So.2d 573, 575 (Miss. 1968); Culbreath v. Johnson, 427 So.2d 705, 707-08 *435 (Miss. 1983)); Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983); Harris v. Bailey Avenue Park, 202 Miss. 776, 791, 32 So.2d 689, 694 (1947).
The burden of proof is on the petitioner in proceedings to modify child support provisions to show a material change of circumstances of one or more of the interested parties  the father, mother, or child  arising subsequent to the original decree. Adams v. Adams, 467 So.2d 211, 214 (Miss. 1985); Tedford v. Dempsey, 437 So.2d at 417; Bracey v. Bracey, 408 So.2d 1387, 1389 (Miss. 1982). The material change, however, which must be proved in support modification proceedings does not have to be a change which "adversely affects the minor child," as is required in custody modification proceedings. Adams v. Adams, 467 So.2d at 214.
We are of the opinion the chancellor was not manifestly wrong in the reduction of appellant's child support and maintenance requirements less than the full amount sought by Adams, nor was he manifestly wrong in reducing the child support obligation of Adams in any amount, as contended by Ms. Adams on cross-appeal.
Adams contends that the lower court erred in awarding appellee any attorney's fees, while, on cross-appeal, Ms. Adams argues that the lower court erred in not awarding the full fees requested by her.
Generally the award of attorney's fees in divorce cases is left to the discretion of the chancellor, assuming that he follows the appropriate standards. Cheatham v. Cheatham, 537 So.2d 435, 440 (Miss. 1988) (citing Holleman v. Holleman, 527 So.2d 90, 95 (Miss. 1988); Carpenter v. Carpenter, 519 So.2d 891, 895 (Miss. 1988); McKee v. McKee, 418 So.2d 764, 767 (Miss. 1982)). The fees assessed should be fair and only compensate for services actually rendered to the client after a determination has been made that the legal work charged for which the fee is claimed was "reasonably required and necessary." McKee v. McKee, 418 So.2d at 767. The chancellor may also properly award attorney's fees in contempt cases. Here there was a petition for contempt even though the chancellor declined to hold the appellant in contempt. Newell v. Hinton, 556 So.2d 1037, 1043 (Miss. 1990); Stauffer v. Stauffer, 379 So.2d 922, 924 (Miss. 1980).
In the case at bar, the chancellor did give Adams some relief from the maintenance award, although, for the most part, the original award was allowed to stand. Ms. Adams was before the court because she was brought there by her former husband. As stated, she was largely successful in defending the original decree. Adams contends his former wife was financially able to pay her attorney and the chancellor was manifestly wrong in awarding her $1,000 toward those expenses. Ms. Adams testified that she had invested $110,000 in I.D.S. funds and she has an annual teacher's salary of $14,383.00. She testified that she was not financially able to pay the attorney's fees immediately but she would eventually pay the amount owed.
We are of the opinion that she should not be required to invade the corpus of her investment or to take from her own teacher's income to pay her attorney's fees under the facts of this case.
We are of the opinion that the chancellor did not err in affixing attorney's fees to be paid by Adams in the amount of $1,000 nor did he err in not awarding the full amount of attorney's fees requested by Ms. Adams.
The issues here are affirmed.

II. and III.

(CROSS APPEAL)
Ms. Adams contends that the chancellor erred in failing to award interest on the past due child support payments. The chancellor stated in his finding of fact, "I will not put any interest on there, because there was a petition for modification, and the matter was before the court, although not disposed of during that period of time."
The chancellor erred in disallowing interest. In Brand v. Brand, 482 So.2d 236 (Miss. 1989), the well established principle was again stated:

*436 We begin with the established proposition that child support entitlements become fixed and vested when, in accordance with a prior decree the payments become due and remain unpaid. (Citations omitted). As each such payment becomes due, it becomes `a judgment' against the supporting parent. (Citations omitted). .. . This being so, there is no reason or principle why a decree for periodic child support payment should not be given like effect. More generally, such `judgments' for alimony and child support are the same as any other judgment in a civil action and as such each bears interest at the legal rate from date.
Brand, at 237-38.
The lower court is reversed on this issue and judgment is entered for interest at the rate of eight percent (8%) per annum on past due amount of child support. See Walters v. Walters, 383 So.2d 827, 828 (Miss. 1980); Miss. Code Ann. § 75-17-7 (1972).
Ms. Adams finally contends that the lower court was manifestly in error in giving credit to Adams for the sum of $1,301.24 deposited in his daughter's account. Adams introduced evidence that he had deposited that amount in her account from which she paid her educational expenses at college. The chancellor said, "Mr. Adams deposited in Shelley's bank account from which she paid fees at Co-Lin and other money, which I'll give him credit for and I think its $1,301.24. The chancellor subtracted that amount from the amount of past due child support payments owed.
The original divorce decree provided for child support payments to be made in addition to any educational expenses. We are of the opinion that the chancellor erred in crediting Adams for such past due child support payments when he was additionally obligated to pay the children's educational expenses as well.
The judgment of the lower court is reversed on this issue and judgment is entered here for $1,301.24, the amount credited by the chancellor against support payments.
The judgment of the lower court is affirmed in part, reversed and rendered in part, and remanded for such other action as may be consistent with this opinion.
AFFIRMED ON DIRECT APPEAL, REVERSED AND RENDERED ON CROSS APPEAL, AND REMANDED FOR ACTION CONSISTENT WITH THIS OPINION.
HAWKINS, P.J. and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ. concur.
DAN M. LEE, P.J. concurs on direct appeal and dissents on cross-appeal.