# IN THE COURT OF APPEALS 09/17/96

# OF THE

# STATE OF MISSISSIPPI

## NO. 94-CA-01141 COA

**HOWARD HUGH HENDERSON**

**APPELLANT**

**v.**

**MARY K. LAWSON HENDERSON**

**APPELLEE**


THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B


TRIAL JUDGE: HON. RAY H. MONTGOMERY

COURT FROM WHICH APPEALED: CHANCERY COURT OF MADISON COUNTY

ATTORNEYS FOR APPELLANT:

JOHN ROBERT WHITE, CHRIS N. K. GANNER

ATTORNEYS FOR APPELLEE:

JOHN D. PRICE, JOANNE S. SAMSON

NATURE OF THE CASE: DIVORCE

TRIAL COURT DISPOSITION: MARY K. LAWSON HENDERSON GRANTED DIVORCE ABSOLUTE ON THE GROUND OF UNCONDONED ADULTERY; PERIODIC ALIMONY AWARDED; EQUITABLE DIVISION OF MARITAL ASSETS ORDERED; AND ATTORNEYS' FEES AWARDED


BEFORE BRIDGES, P.J., KING, AND McMILLIN, JJ.

BRIDGES, P.J., FOR THE COURT:

The Chancery Court of Madison County granted Mary K. Lawson Henderson a divorce from Howard Hugh Henderson on the ground of uncondoned adultery. Aggrieved, Mr. Henderson appeals arguing: (1) the lower court erred in restricting Mr. Henderson's visitation to times when "the Defendant's paramour is not present"; (2) the lower court erred in awarding Mrs. Henderson attorneys' fees in the amount of $3,500.00 plus expenses of $852.92; (3) the lower court failed to consider together the equitable distribution of the marital assets, the award of periodic alimony, and the award of child support; (4) it was error to require Mr. Henderson to carry $170,000.00 of life insurance. Finding merit in Mr. Henderson's first and second enumerations of error only, we reverse and render with respect to the first and second enumerations of error and affirm with respect to the third and fourth enumerations of error.

THE FACTS

Howard and Mary Henderson were married January 24, 1981, in Jackson, Mississippi. On July 21, 1982, they had their only child Ryan Lawson Henderson. Initially, they lived together in Mr. Henderson's house trailer in Jackson. At that time, Mr. Henderson was earning around $14,000 per year in the automotive business, and Mrs. Henderson was earning around $17,900 per year as a public school teacher.

At the time of trial, Mr. Henderson was earning around $65,000 per year as a parts and service manager at an automobile dealership. In the year before the divorce, Mrs. Henderson's wages as a public school teacher had increased to around $28,000. During the marriage, the couple commingled their assets and maintained a single checking account.

In 1982, the couple used a $20,000 gift from Mrs. Henderson's parents as a down payment on a conventional home in Jackson, Mississippi. In 1989, the couple received a gift of nearly $100,000 when Mrs. Henderson's father died. Several years later, the couple built a 3,600 square foot home in Madison, Mississippi, that was appraised at the time of completion at $285,000. At the time of trial, the couple's indebtedness on the house had been reduced to around $68,000.

The couple separated in October of 1993, with Mr. Henderson leaving the house in Madison to live in a house trailer. Shortly thereafter, Mrs. Henderson filed a complaint for divorce alleging uncondoned adultery and, alternatively, irreconcilable differences. During the separation and divorce proceedings, Mr. Henderson paid child support of $1,000 per month for three or four months, after which he paid $700 per month. On September 2, 1994, Mrs. Henderson was granted a divorce. The written opinion provided for the settlement of child custody, support, and visitation, as well as alimony, and the division of real and personal property. Due only to a typographical error in the final judgement, a corrected final judgment of divorce was entered on October 12, 1994.

Mrs. Henderson was awarded custody of their minor son, Ryan, and Mr. Henderson was given standard year-round visitation. Mr. Henderson's visitation was, however, limited to times when his "paramour" was not present. Mrs. Henderson was also awarded $560 per month in child support, $683 per month in periodic alimony, and attorneys' fees and expenses totaling $4,352.92. Full use and ownership of the house in Madison, Mississippi, was given to Mrs. Henderson. She was also awarded the contents of the house, except for Mr. Henderson's clothes, and certain items specifically awarded to him. Mrs. Henderson was awarded the Medley/Schwab account valued at $46,000, an A.B. Culbertson account valued at $19,212, her teacher retirement account valued at $36,000, her

annuity account valued at approximately $4,800, her credit union account valued at $5,062, a checking account valued at $700, and a 1991 Dodge Caravan.

On the other hand, Mr. Henderson was awarded the pontoon boat, a 401K plan valued at $1,300, an IRA valued at $9,000, a bicycle rack, a stereo receiver, a turntable, tapes, and a water color painting. Mr. Henderson was also required to maintain health insurance for Ryan and a life insurance policy in the amount of $170,000 with Ryan named as the beneficiary.

ARGUMENT AND DISCUSSION OF THE LAW

> I. WHETHER THE LOWER COURT ERRED IN RESTRICTING HOWARD HENDERSON'S VISITATION TO TIMES WHEN "THE DEFENDANT'S PARAMOUR IS NOT PRESENT."

Mr. Henderson argues on appeal that it was error to restrict his visitation with his son, Ryan, to times when his "paramour" was not present.

> [V]isitation and restrictions placed upon it are within the discretion of the chancery court. Visitation should be set up with the best interests of the children as the paramount consideration, keeping in mind the rights of the non-custodial parent and the objective that parent and child should have as close and loving a relationship as possible, despite the fact that they may not live in the same house.

*White v. Thompson*, 569 So. 2d, 1181, 1184 (Miss. 1990).

Furthermore, the Supreme Court of Mississippi has stated that actual danger or substantial detriment to the children must be shown before the chancellor may place restrictions on visitation. *Chamblee v. Chamblee*, 637 So. 2d, 850, 862 (Miss. 1994). In *Chamblee*, the chancellor granted the husband a divorce on the ground of adultery, and further granted the husband custody of the sole minor child. *Id.* at 861. In granting visitation to the mother, the chancellor's order required that during visitation with his mother, the minor child could not be in the presence of "any male companion [of his mother's] not related to her by blood or marriage." *Id.* at 859. The supreme court held the chancellor's restriction on visitation manifest error and reversed. *Id.* at 862. The court relied on previous case law to delineate the requirements for chancellor-imposed restrictions on visitation:

> In *Cox v. Moulds*, 490 So. 2d 866 (Miss. 1986), this Court stated that "something approaching actual danger or other substantial detriment to the children" must be found before a chancellor can place restrictions on visitation. The mere fact that a parent is having an affair is not enough to create the danger requisite to limit visitation. *Morrow v. Morrow*, 591 So. 2d 829 (Miss. 1991) states that "an extramarital relationship is not, per se, an adverse circumstance. . . ."

> Another case, *Dunn v. Dunn*, 609 So. 2d 1277 (Miss. 1992), is analagous to the case at bar. Michael Dunn admitted to having an affair with a co-worker and a divorce was

granted on the grounds of adultery. The chancellor limited visitation with Michael so that the children could not be in the presence of the person he was having an affair with. This court stated, 'absent any evidence that visitation with Michael and his lover would be harmful to the children, the chancellor erred and abused his discretion in placing such a restriction on Michael's visitation.'

*Chamblee*, 637 So. 2d at 861-62 (citations omitted). While one might initially agree with the chancellor's decision, it is unsupported by case law of our state. As an error correction court, we are bound by precedent imparted by the Mississippi Supreme Court. In the present case, the chancellor had no evidentiary basis for imposing such stringent restrictions on Mr. Henderson's visitation with his son. Mrs. Henderson presented no evidence of "something approaching actual or other substantial detriment" to her son if he spends time with his father and his paramour. *See Id*. at 862.

Accordingly, we feel that the chancellor erred in restricting Mr. Henderson's visitation with Ryan to times when his paramour is not present. We reverse and render with respect to this issue only, leaving undisturbed all other aspects of visitation as set out by the chancellor in the divorce decree.

### II. WHETHER THE COURT ERRED IN AWARDING MRS. HENDERSON ATTORNEYS' FEES IN THE AMOUNT OF $3,500 PLUS EXPENSES OF $852.92.

In his appeal, Mr. Henderson argues that the chancellor erred in awarding attorneys' fees and expenses to Mrs. Henderson. Mr. Henderson specifically argues that Mrs. Henderson never expressed on the record that she was unable to pay her attorneys. Furthermore, Mr. Henderson argues that the chancellor never, as is required by law, made any finding that Mrs. Henderson was unable to pay her attorneys.

Our supreme court has held that a party seeking attorney's fees must clearly demonstrate the inability to pay the fees, and in the absence thereof, the chancellor may not award such fees. *Rogers v. Rogers,* 662 So. 2d 1111, 1116 (Miss. 1995)*; Martin v. Martin,* 566 So. 2d 704, 707 (Miss. 1990). If the record fails to reflect the inability to pay, or if the party seeking the fees does not testify that she is unable to pay the fees, then the chancellor *must* find that the party was unable to pay her attorneys' fees, a factor necessary in making such an award. *Johnson v. Johnson,* 650 So. 2d 1281, 1288 (Miss. 1994)*; McKee v. McKee,* 418 So. 2d 764, 767 (Miss. 1982).

Mrs. Henderson did not testify that she was unable to pay her attorney or that she wanted the judge to award her an attorneys' fee. There is no finding that Mrs. Henderson was unable to pay her attorneys' fees contained in the record. Without any demonstration of this inability to pay, there can be no justification of an award of attorneys' fees. In light of the above facts and law, we feel that the chancellor erred in awarding attorneys' fees to Mrs. Henderson, and therefore, reverse and render.

### III. WHETHER THE COURT ERRED BY FAILING TO CONSIDER TOGETHER THE EQUITABLE DISTRIBUTION OF THE MARITAL ASSETS, THE AWARD OF PERIODIC ALIMONY, AND THE AWARD OF CHILD SUPPORT.

Mr. Henderson specifically contests the chancellor's divesting him of his interest in the marital home and the award of periodic alimony in light of the estimated value of the total award to Mrs. Henderson. We hold that the chancellor's distribution of marital assets, award of periodic alimony, and award of child support are correct and are supported by facts.

"Our scope of review in domestic relations matters is limited under the familiar rule that this Court will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard." *Johnson v. Johnson,* 650 So. 2d 1281, 1285 (Miss. 1994) (citing *McEwen v. McEwen*, 631 So. 2d 821, 823 (Miss. 1994)).

The division of marital assets is now governed by the guidelines set forth by the Mississippi Supreme Court in *Hemsley v. Hemsley*, 639 So. 2d 909 (Miss. 1994) and *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994). *See Johnson,* 650 So. 2d at 1287.

> First, the character of the parties' assets, i.e., marital or nonmarital, must be determined pursuant to *Hemsley*. The marital property is then equitably divided, employing the *Ferguson* factors as guidelines, in light of each parties' nonmarital property. *Ferguson*, 639 So. 2d at 928. If there are sufficient marital assets which, when equitably divided and considered with each spouse's nonmarital assets, will adequately provide for both parties, no more need be done. If the situation is such that an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party, then alimony based on the value of nonmarital assets should be considered.

*Johnson*, 650 So. 2d at 1287. "Upon dissolution of a marriage, the chancery court has the discretion to award periodic and/or lump sum alimony, divide real and personal property, including the divesting of title, and may consider awarding future interests to be received by each spouse." *Ferguson*, 639 So. 2d at 929. As shown above, it was well within the power of the chancellor to award title to the marital home to Mrs. Henderson.

We are satisfied that the chancellor did not err in making the equitable distribution of property based on his consideration of the totality of circumstances, including the financial declarations of both parties, and, therefore, we shall not disturb his findings. With regard to Mr. Henderson's challenge to the award of periodic alimony, it is well settled that the award of alimony is left to the discretion of the chancellor. *Brooks v. Brooks*, 652 So. 2d 1113, 1121 (Miss. 1995). Furthermore, the *amount* of alimony awarded is also left to the discretion of the chancellor because the chancellor is in the best position to evaluate the equities of a given situation. *Brooks*, 652 So. 2d at 1121 (emphasis added). Accordingly, we affirm the chancellor's equitable distribution of the marital assets, the award of periodic alimony, and the award of child support.

> IV. WHETHER THE COURT ERRED IN REQUIRING MR. HENDERSON TO CARRY $170,000 IN LIFE INSURANCE.

Mr. Henderson finally argues that the chancellor erred in requiring him to carry $170,000 in life

insurance with his son, Ryan, being named as the beneficiary. Mr. Henderson specifically argues that the amount of life insurance ($170,000) he is required to carry is nearly three times the total he estimates he will have to pay in child support until his son, Ryan, reaches the age of twenty-one ($60,480). Based on the following language, this argument is without merit:

> [F]indings of fact made by a chancellor may not be set aside or disturbed on appeal unless manifestly wrong; this is so whether the finding relates to evidentiary or ultimate fact question . . . . With respect to issues of fact where the chancellor made no specific finding, this Court proceeds on the assumption that the chancellor resolved all such fact issues in favor of the appellee, or at least in a manner consistent with the decree.

*Morreale v. Morreale*, 646 So. 2d 1264, 1266-67 (Miss. 1994) (quoting *Smith v. Smith*, 545 So. 2d 725, 727 (Miss. 1989)).

Finding no manifest error in the chancellor's decision to require Mr. Henderson to carry life insurance, we affirm the chancellor's decision.

**THE JUDGMENT OF THE CHANCERY COURT OF MADISON COUNTY IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.**

**FRAISER, C.J., THOMAS, P.J., COLEMAN, DIAZ, KING, AND McMILLIN, JJ., CONCUR. PAYNE, J., CONCURS IN PART AND DISSENTS IN PART JOINED BY BARBER, J. SOUTHWICK, J., NOT PARTICIPATING.**

# IN THE COURT OF APPEALS 09/17/96

# OF THE

# STATE OF MISSISSIPPI

### NO. 94-CA-01141 COA

**HOWARD HUGH HENDERSON**

**APPELLANT**

**v.**

**MARY K. LAWSON HENDERSON**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

PAYNE, J., CONCURRING IN PART, DISSENTING IN PART:

I respectfully dissent as to the issue of attorneys' fees and concur with the majority as to all other issues. I write separately to clarify what I believe the law to be in regard to attorneys' fees.

This Court will be establishing an alarming criterion should we follow the majority's analysis as to the issue of attorneys' fees. Specifically, the majority holds:

> [Wife] *did not testify* that she was unable to pay her attorney or that she wanted the judge to award her an attorneys' fee. There *was no finding* that Mrs. Henderson was unable to pay her attorneys' fees contained in the record. Without any demonstration of *this inability to pay,* there can be no justification of an award of attorneys' fees. In light of the above facts and law, we feel that the chancellor erred in awarding attorneys' fees to Mrs. Henderson, and therefore, reverse and render.

*Supra* at 6 (majority opinion) (emphasis added). In *Creekmore v. Creekmore*, 651 So. 2d 513, 520 (Miss. 1995) the Mississippi Supreme Court held that "[a]ttorney's fees are not generally awarded unless the party requesting such fees has *established the inability to pay*." (citing *Dunn v. Dunn*, 609 So. 2d 1277, 1287 (Miss. 1992)) (emphasis added). The majority's wording seems to indicate that regardless of the evidence in the record, the chancellor is prohibited from granting attorneys' fees unless either (1) the party seeking an award for attorneys' fees [in this case, the wife] testifies "I am unable to pay" or (2) the chancellor states "I find [the party receiving the award] unable to pay." Under the majority's logic and ultimate conclusion, failure of these magic words to appear can only result in reversal if such an award is made -- regardless of substantial evidence in the record of the scarce resources of the party to whom attorneys' fees are awarded. If the entire record were silent as to financial facts from which the chancellor could draw a conclusion of inability to pay, then the chancellor would be incorrect to make an award. That is not the case here.

In *Setser v. Piazza,* 644 So. 2d 1211 (Miss. 1994), the Mississippi Supreme Court held, "[t]his Court will not reverse the chancellor on an award of attorney's fees unless manifest error is *revealed by the record.*" *Id.* at 1215 (emphasis added). In the present case, the record reveals the complete financial picture of the parties. It shows that the wife has some assets so that she would not be rendered penniless if she were required to pay her own attorneys' fees. However, the Mississippi Supreme Court found in *Adams v. Adams,* 591 So. 2d 431 (Miss. 1991) that a woman who had $110,000 invested, had $14,000 in annual salary and had testified that she could eventually pay the attorney's fees in full would not be required to impoverish herself in order to do so. The court held, "[w]e are of the opinion that she should not be required to invade the corpus of her investment or to take from her own teacher's income to pay her attorney's fees under the facts of this case." *Id.* at 435. In the present case, the wife has fewer dollars in investments than in that case and an annual salary of only $28,000 as a school teacher while the husband's annual salary is $65,000. It seems that the rule in *Adams* should apply here. These facts on which the chancellor relied to award attorneys' fees are *in*

*the record.* This law is on the books. By saying that the chancellor is manifestly in error just because the wife forgot to "cross the 't'" of specifically saying "I am unable to pay" when the facts are firmly established in the record, and the court forgot to "dot the 'i'" of "I find her unable to pay," is to give more weight to form than substance. It might even be said to amount to our substituting our judgment on the facts for that of the chancellor. Clearly proof of one's inability to pay is required, however, magic words are not.

I agree with the majority's reliance on *Morreale v. Morreale,* 646 So. 2d 1264, 1266-67 (Miss. 1994) (quoting *Smith v. Smith*, 545 So. 2d 725, 727 (Miss. 1989)), "[w]ith respect to issues of fact [inability to pay] where the chancellor made no specific finding, this Court proceeds on the assumption that the chancellor *resolved all such fact issues in favor of the appellee, or at least in a manner consistent with the decree. Id.* at 1267. The fact issue of inability to pay attorneys' fees should not be excluded from this rule. I find it interesting to note that when asked by counsel as to the appropriate time to take up the issue of attorneys' fees, the learned chancellor stated on the record, "the Court is aware of the long lineage of cases that state if the party is able to pay their own attorney, then they should do so, and the Court won't order attorney fees." This statement illustrates that the chancellor was well aware of the case law regarding attorneys' fees awards and it is reasonable to conclude that the chancellor, in fact, determined that the wife was unable to pay her own attorneys' fees.

In light of the foregoing discussion, I can only conclude that the chancellor did not abuse his discretion in awarding partial attorneys' fees to the wife, as the record obviously supports such a finding. Accordingly, I would affirm on the issue of attorneys' fees.

**BARBER, J., JOINS THIS SEPARATE WRITTEN OPINION.**