# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00110-COA

**MONTE KNIGHT**                                        **APPELLANT**

**v.**

**MONICA KNIGHT**                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/22/2014 |
| TRIAL JUDGE: | HON. LAWRENCE PRIMEAUX |
| COURT FROM WHICH APPEALED: | CLARKE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM B. JACOB |
| | JOSEPH A. KIERONSKI JR. |
| | DANIEL P. SELF JR. |
| ATTORNEYS FOR APPELLEE: | MICHAEL D. GOGGANS |
| | ROBERT D. JONES |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | GRANTED WIFE DIVORCE ON GROUND OF ADULTERY, AWARDED CUSTODY OF MINOR CHILD TO WIFE, DIVIDED MARITAL ASSETS, AWARDED ATTORNEY'S FEES TO WIFE, AND FOUND BOTH HUSBAND AND WIFE IN CONTEMPT |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 07/19/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., CARLTON AND FAIR, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1. In this appeal, we must determine whether the chancellor equitably divided the parties' marital assets and whether the chancellor erred in awarding attorney's fees to the wife.

**PROCEDURAL HISTORY**

¶2. Monte and Monica Knight married in 2000 and separated in 2011. Monica filed for divorce in the Clarke County Chancery Court in November 2011. In January 2012, the chancellor entered a temporary order awarding custody of the parties' minor child to Monica. In lieu of child support, Monte was ordered to pay the mortgage on the marital home. The order, among other things, further provided that neither party sell, dispose of, or encumber any assets acquired during the marriage without the agreement of both parties or the permission of the court.

¶3. Both parties filed contempt actions against each other, alleging the other violated the chancellor's temporary order. The chancellor found Monte in contempt for failing to pay the mortgage on the marital home, pawning Monica's wedding ring, encumbering assets with additional debt without Monica's agreement or the court's permission, and failing to return certain items to Monica. The chancellor found Monica in contempt for refusing to return certain items to Monte, including a tractor that Monte used in his mowing business.

¶4. Monte failed to pay the mortgage as ordered, and the marital home went into foreclosure. The proceeds of the foreclosure sale were placed in the court's registry. The chancellor subsequently entered an amended temporary order requiring Monte to pay child support. Ultimately, the parties stipulated to a divorce on the ground of Monte's uncondoned adultery as well as custody and visitation of the minor child. The parties submitted the following issues to the chancellor: equitable distribution of the marital assets, child support, attorney's fees, and resolution of pending contempt motions.

¶5. After a trial, the chancellor granted a divorce, awarded custody of the minor child to

Monica, divided the marital assets, and awarded $7,500 in attorney's fees to Monica. The chancellor found both parties to be in contempt, ordered Monte to pay Monica an additional $2,000 in attorney's fees, and ordered Monica to pay Monte $1,500 in attorney's fees. Monte filed a motion for a new trial and/or correction of the judgment. The chancellor issued an amended final judgment in which he corrected errors in his original judgment. Monte now appeals, asserting the chancellor erred in dividing the parties' marital assets and in awarding Monica $7,500 in attorney's fees.

**FACTS**

¶6. In 2003, Monte opened Green Fleet Mowing Service, a business that mowed grass on highways. At one point, Monte had contracts with the Mississippi Department of Transportation and the Lauderdale County Board of Supervisors. During trial, Monte estimated the value of these contracts was between $300,000 and $400,000. Monte purchased several tractors, bush hogs, other support vehicles, and equipment for the business.

¶7. Monte testified that the business was a family operation—he was responsible for the field work, and Monica was responsible for the office work. Monica disputed this characterization, testifying that she only did paper work for the business occasionally when specifically directed by Monte. Regardless, the chancellor noted that tax documents indicated Monte was the sole proprietor and operator of Green Fleet. And Monte was solely responsible for the daily operations of Green Fleet, including obtaining financing. In 2003, Monte borrowed $50,000 from Floyd McCarra to start Green Fleet. The loan was renewed

3

in 2007 by Monte, and two John Deere four-wheel-drive tractors were used as collateral.[1]

¶8.    The record indicates federal and state tax liens of approximately $97,723.86. Monte claims Monica failed to pay the taxes that resulted in these liens; thus, she should be responsible for them. The chancellor noted that the record indicated tax liens due and unpaid for every year Green Fleet operated, except for 2003. Monte's 2013 federal tax return contained a net-operating-loss worksheet showing that in 2003, 2004, 2005, 2006, and 2008, Monte reported business losses totaling $565,250. Monte testified that he did not file returns in 2007, 2009, 2010, 2011, and 2012. The chancellor also noted that Monte's 2013 tax return does not reflect any depreciation charged on any equipment used by Green Fleet, despite the fact that Monte used numerous pieces of equipment in the business.

¶9.    Monte claimed that two state tax assessments totaling $15,605.94 resulted from Monica's filing of her own business taxes against his taxpayer identification number. Monte opened a business in November 2009 in the name of Monte Knight, d/b/a "Knights Family Christmas Tree." After the separation, Monica obtained a state taxpayer identification number for "Knights," which was a similar business. The documents included in the record indicate that the assessments were incurred through September 30, 2011, which predates the parties' separation and Monica's business. Monte also claimed that Monica withdrew $36,000 from his business account at the time of the separation. The chancellor found that Monte failed to support this assertion with any credible evidence.

_____

[1] Testimony during trial indicated that one of these tractors was no longer in existence at the time of trial. Although the record is somewhat confusing, it appears Monte later took out a loan on the other tractor.

¶10.   At some point during the marriage, Monte decided to become a professional fisherman after winning $60,000 in a fishing tournament.  He entered into an agreement with a company in which he was provided with a fishing boat on a delayed billing basis.  After using the boat for one year and promoting the company, Monte could sell the boat and pay costs to the company or keep the boat and pay what was owed to the company.  The chancellor noted that Monte paid approximately $10,000 for equipment for the boat, all of which was lost when he sold the boat at a loss at the end of the year.

¶11.   Green Fleet eventually went out of business.  Monte claims the business faltered because Monica took one of his tractors, causing him to lose a lucrative contract.  Monica admittedly removed the tractor from the side of the road, where it had been sitting for an extended period of time.  In fact, during trial, Monte admitted this tractor had been sitting idle on the side of road for approximately thirty-seven months.  The chancellor found much of Monte's testimony to be less than credible, particularly the testimony regarding the demise of Green Fleet.  The chancellor stated, "Even if Monte felt that Monica's actions genuinely jeopardized his ability to do his work, he did not satisfy this court that he took any reasonable actions that any legitimate business operator would have taken to protect and perhaps save his business."

¶12.   The chancellor also noted that while Monte claimed financial hardship, Monte had been paying his girlfriend's rent since his separation from Monica.  Monte conceded that had he not been paying his girlfriend's rent, then he could have prevented the repossession of a camper.  After the temporary order, Monte failed to pay the mortgage on the marital home,

which ultimately went into foreclosure. Monica was forced to move and left behind some of the parties' personal property. Contrary to the chancellor's orders, Monte sold or encumbered marital assets. For instance, Monte traded one tractor in order to acquire two more. And Monte sold two trucks, fishing equipment, and a gooseneck trailer. Monica testified that Monte quit paying the insurance premiums on the 2007 Chevy Tahoe that she drove. She could not afford the insurance premiums, and as a result, the vehicle was repossessed.

¶13. In August 2013, Monte began working for Patrick Allen as a sales manager for Valley Storm Shelters. Monte drives a company car, and Allen pays for fuel and maintenance. Prior to trial, Allen purchased a 2008 Dodge 3500 from Monte for $16,650. This truck was one of the items sold contrary to the chancellor's temporary order.

## STANDARD OF REVIEW

¶14. We afford chancellors much discretion in our review of domestic-relations cases. *Steiner v. Steiner*, 788 So. 2d 771, 777 (¶18) (Miss. 2001). This Court will not disturb a chancellor's findings unless they are manifestly wrong or clearly erroneous, or the chancellor applied an erroneous legal standard. *Mizell v. Mizell*, 708 So. 2d 55, 59 (¶13) (Miss. 1998).

## DISCUSSION

### I.     Equitable Division

¶15. Monte initially argues that the chancellor did not classify the debts as marital or nonmarital. However, the parties stipulated prior to trial that the issues they were submitting to the chancellor for resolution included the equitable distribution of the marital assets and

6

the determination of which party was responsible for the marital debts. Thus, the parties are essentially conceding that any property—and any debts associated with such property—acquired during the marriage was marital property.

### A. Debt

¶16. Monte argues that the chancellor did not address the debts associated with the assets he awarded to Monte. The chancellor determined that the fair market value of all marital assets was $254,477.50. The chancellor awarded Monte assets with a fair market value of $154,112.50, and Monica assets with a fair market value of $100,365. Monte claims the debts associated with the assets he received equal $128,907.65. As a result, Monte claims that in reality, he was awarded only $25,204.85 in assets. Monte claims the chancellor failed to address the debts associated with several assets, including a pressure washer, two tractors, and two trucks. Although the chancellor did not specifically address the debt on the pressure washer, which Monte estimated to be approximately $2,500, Monte stated during trial that if awarded the item, then he should be responsible for the debt. Both trucks were sold prior to trial in violation of the temporary order.

¶17. Neither tractor was assessed any value by the chancellor. We first note that one of the tractors, listed as item 231 in the chancellor's table of assets, is actually a 6320 two-wheel-drive John Deere tractor, not a four-wheel-drive tractor as Monte states in his brief. And the record indicates this tractor had been sold or traded at some point prior to trial. There was no credible testimony regarding the monetary value of this tractor. Monte argues the other tractor, listed as item 230 in the chancellor's table of assets, was worth approximately

$26,500, but the debt associated with the tractor was $66,733. Monte included the $50,000 loan from Floyd McCarra as part of the debt on this tractor, but there was testimony indicating that the statute of limitations on this loan had expired. Regardless, the testimony regarding the value of this tractor is vague and confusing at best—as was the case with much of the testimony regarding the value of certain marital assets. And it is the parties' responsibility to provide competent proof of the value of these assets. *Dunaway v. Dunaway*, 749 So. 2d 1112, 1118 (¶14) (Miss. Ct. App. 1999). The chancellor did the best he could given the often vague and confusing evidence concerning the value (and debts) of certain marital assets.

¶18.    We find substantial evidence to support the chancellor's decision. Monte argues the chancellor's decision is unfair, but it is well settled that equitable distribution does not mean equal distribution. *Dunn v. Dunn*, 911 So. 2d 591, 596 (¶12) (Miss. Ct. App. 2005). Upon review of the record, the chancellor made comprehensive findings in dividing the marital estate and followed the *Ferguson*[2] factors in doing so. The chancellor discussed Monte's debts and his habit of encumbering marital property with additional liens, finding that "Monte should be responsible for the debts he has incurred. The division of the marital estate should recognize that Monte will need to have the assets that are encumbered by debts." The chancellor further stated that "Monte does not have the funds to pay off liens to give Monica items debt-free. If Monica were to be given items with liens, it is problematical whether Monte would pay the liens, and it is likely that the parties would wind

---

[2]  *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

up in further, expensive litigation." It is clear from the record that the chancellor found much of Monte's testimony regarding his business dealings and the value of certain assets to be less than credible—particularly since Monte incurred much of the debt associated with certain assets in direct violation of the temporary order.

### B. Business Debts

¶19. Monte contends the chancellor erred by holding him responsible for the debts and obligations of Green Fleet, specifically the $97,723.86 in federal and state tax liens. Monte argues Monica benefitted from the income produced by Green Fleet; thus, she should be responsible for these debts. The chancellor found that contrary to Monte's assertions, Monica was not involved with the business operations of Green Fleet. And the chancellor noted that all the tax liens were listed under Monte's Social Security number. Before assigning this debt to Monte, the chancellor considered each party's economic and domestic contributions, the value of marital assets, and the disposal of marital assets. Monte has failed to show that the chancellor erred by ordering him to be responsible for the tax liens.

### C. Fishing Debts

¶20. Monte argues the chancellor erred by making him responsible for the debt associated with his fishing boat, which was approximately $10,000. Monte contends the family benefitted from his professional fishing winnings; thus, Monica should have been assessed a portion of the debt associated with his fishing boat. However, given the chancellor's comprehensive findings regarding the parties' debts and assets, we do not find any clear error in this instance.

### D.     Loss of Business / Marital Home

¶21.    Monte claims the chancellor unfairly blamed him for the loss of the marital home. Monte argues that Monica stole his tractor, requiring him to shut down Green Fleet; thus, he had no income to pay the mortgage.  The chancellor was unsympathetic to Monte's claims for several reasons, finding that: Monte failed to take "any reasonable actions that any legitimate business operator would have taken to protect and perhaps save his business"; Green Fleet had "lost money every year of its existence"; and Green Fleet "generated tax liens almost from the start."  We also reiterate that Monte testified the tractor had been sitting idle on the side of the road for approximately thirty-seven months before Monica removed it.  And the chancellor did find Monica in contempt for taking the tractor.  We find no merit to this argument.

### E.     Wasteful Dissipation

¶22.    Monte contends the chancellor unfairly found that he had dissipated marital assets. The chancellor determined that Monte: failed to pay the mortgage as ordered, resulting in foreclosure of the marital home; created new debt against the court's order; sold marital assets against the court's order; allowed Green Fleet to lose lucrative contracts; invested money in fishing equipment when the parties were not in a financial situation to do so; and allowed tax liens to accumulate for over ten years.  Dissipation of assets is one of the factors a chancellor considers in dividing the marital assets.  *See Ferguson*, 639 So. 2d at 928 (Miss. 1994).  In this instance, we find substantial evidence to support the chancellor's findings.

### II.    Attorney's Fees

¶23.    Monte argues the chancellor should not have awarded Monica $7,500 in attorney's fees.[3] Monte claims Monica failed to prove her inability to pay her attorney's fees. "The award of attorney['s] fees in divorce cases is left to the discretion of the chancellor, assuming he follows the appropriate standards." *Creekmore v. Creekmore*, 651 So. 2d 513, 520 (Miss. 1995) (citing *Adams v. Adams*, 591 So. 2d 431, 435 (Miss. 1991)). "Attorney['s] fees are not generally awarded unless the party requesting such fees has established the inability to pay." *Id*. (citing *Dunn v. Dunn*, 609 So. 2d 1277, 1287 (Miss. 1992)).

¶24.    It has long been the practice of trial courts to apply the factors in *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982), in awarding attorney's fees. In this case, the chancellor did not make an on-the-record analysis of the *McKee* factors, nor did he consider Monica's ability to pay. While the failure to address the *McKee* factors is not necessarily reversible error, the record does not contain any testimony or evidence regarding Monica's inability to pay her attorney's fees. *See Evans v. Evans*, 75 So. 3d 1083, 1090 (¶¶25-26) (Miss. Ct. App. 2011). And Monica was awarded assets totaling $100,365, which included approximately $34,000 from the sale of the marital home. Therefore, we must remand the issue of attorney's fees for further consideration. *See id*. On remand, any award of attorney's fees must be supported with findings concerning Monica's inability to pay and the reasonableness of the award under the *McKee* factors.

¶25.    **THE JUDGMENT OF THE CLARKE COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND**

---

[3] Monte is not appealing the attorney's fees relating to the contempt actions.

11

**THE APPELLEE.**

  **IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**