# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CA-00110-SCT

*JANET THEUNISSEN*

*v.*

*JOSEPH DANIEL THEUNISSEN*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/29/95 |
| TRIAL JUDGE: | HON. WILLIAM L. GRIFFIN JR. |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WALTER BEAUREGARD SWAIN, JR. |
| ATTORNEY FOR APPELLEE: | PHILIP MANSOUR, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 10/16/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/6/97 |

**BEFORE SULLIVAN, P.J., ROBERTS AND SMITH, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

Janet and Dan Theunissen were married on January 17, 1970, in Humphreys County, Mississippi. They have three sons, Paul, Bubba, and Jason who was still a minor at the time of trial. The couple separated on July 2, 1993. Janet filed a complaint for divorce in the Chancery Court of Washington County on September 13, 1994, on grounds of habitual, cruel and inhuman treatment, adultery, and/or irreconcilable differences. On November 7, 1994, Dan filed his answer. On March 31, 1995, Janet filed an amended complaint after attempts at reconciliation failed.

When the couple first married, neither had any noteworthy assets. Janet remained a housewife throughout the marriage. Dan was a carpenter but eventually began farming. During their marriage, they purchased their homestead, which sits on one acre of land and is worth $60,000. The couple also acquired approximately 880 acres of farmland in three tracts. Tract I, the Newton Place, consists of about 400 acres and is titled in Dan's name. The Newton Place is subject to a purchase money indebtedness of approximately $161,387. Tract II, the Zepponi Place, consists of 370 acres and is titled in both Dan and Janet's names. There are two mortgages on the Zepponi Place, an SBA for

$91,320 and a FHA for $95,142. Tract III, the Irby Place, consists of 80 acres and is titled in both Dan and Janet's names. The Irby Place is subject to a purchase money indebtedness of approximately $20,639. Janet and Dan must pay approximately $4,400 per year in property taxes for all of the land.

Dan has farmed for over twenty years. In 1990, he formed a partnership with his son Paul (Theunissen Farms Partnership), to manage his farming. The partnership rents most of the land owned by Dan and Janet except the Irby Place. The partnership also rents land not owned by either Janet or Dan. In 1993, Paul left the partnership, and Janet and Bubba became partners. Between 1993 and 1995, Janet owned a 30% interest, Bubba owned a 30% interest, and Dan owned the remaining 40% interest. The partnership's equity is valued at $332,119.

Throughout the divorce proceedings, Janet maintained that she was an integral part of the partnership operation. She asserted that she held down headquarters by answering the phones and monitoring the radio, as well as cooking for the meetings held in her house. She also claims that she helped advise Dan about farming. Although Janet attended meetings at her home concerning the farm business, she had a minimal part in actually conducting farm business. The chancellor concluded:

> Janet, as recited in her "Statement of Facts" is a ". . . homemaker and mother, [who] also assisted in the rice farming operation by providing food, labor, and other services as necessary. *She was, essentially, a small farmer's housewife who assisted in the farming operation as necessary and who support [sic] her husband's endeavor's.*" The Court finds that Janet's participation in the business aspects of the farming operation was negligible, though her contributions to the operation were not necessarily negligible. In other words, her limited contribution to the partnership, though often helpful, could have been done by a minimum wage employee and no special training or expertise was required. As to the partnership, she certainly was not indispensable. Her contributions, though, to the other areas of the Theunissen life and life style were of significant value.

Evidence revealed that each party misused marital assets. Dan had an adulterous affair and spent money on his paramour. Evidence revealed that he bought her an automobile, jewelry, clothing and household furnishings. Dan also spent money on her while dining and going out of town. Dan paid for most of these expenses out of his $18,600 inheritance from his parents' estate.

Janet misused the marital assets by accumulating an excessive credit card bill. Just before the separation, Janet's credit card debt was $20,000. Since the separation, her credit card debt has increased to over $50,000. Janet claims she spent the money on cash advances, because she did not have enough money to live on and support Jason. She also testified that the house needed new furnishings. Janet received approximately $1,300 per month from the partnership, continuing after the couple separated. Evidence revealed that at least some of these expenses were luxury items. During this time, Janet did not pay a house note, car payments, car insurance, utilities, taxes, school tuition, or medical insurance.

Janet has completed two years of college. She worked as a waitress before marrying Dan and had at least four jobs while married, including a job as a sales clerk in a department store. However, she has spent the majority of her marriage as a housewife, raising the children and keeping the house in order. Janet claims that she is physically unable to perform manual farm labor, but is mentally capable of conducting other aspects of the business. On the other hand, she maintains that she is unable to

participate in the public workforce. Janet did not provide any medical report showing that she is unable to work a day to day job.

The partnership pays for Janet's medical insurance. She claims that if she loses her medical coverage, she will be unable to replace it. Janet failed to put on any evidence supporting her contention. The evidence did show, however that Janet has a history of physical and mental problems. She had back surgery on August 13, 1992. Janet suffers from anxiety and depression, and twice attempted suicide.

Janet and Dan stipulated to a no fault divorce. The only issue in the court proceedings was the equitable distribution of the marital assets. Both parties agreed that the marital assets should be divided equally.

The chancellor found that the parties' total interest in the partnership is $217,450, and awarded Dan full ownership interest. Disregarding the 40%-30% relationship in the partnership, the chancellor awarded Janet $108,725 for her interest in the partnership to be paid by Dan in five equal annual installments with an interest rate of 9% per annum.

The chancellor found that all three tracts have a combined equity of $116,900. He awarded Janet one-half of the equity interest, $58,450, to be paid within forty-five days of the entry of judgment. Janet was ordered to execute all documents necessary to transfer her interest in the real property to Dan.

The chancellor awarded Janet exclusive ownership and possession of the marital residence and the one-half acre of land which constitutes the yard area of the residence. Janet also received the household goods and furnishings valued at $30,000, and her car along with its remaining debt. Dan was awarded the adjacent one-half acre of real property with the farm buildings. The court ordered Dan to pay Janet alimony in the amount of five hundred dollars a month for forty-eight months, and ordered Dan to contribute significantly in the support of their minor son, Jason.

The chancellor specifically found that the marital estate subject to equitable distribution totaled $457, 450. He noted that Janet was awarded assets valued at $260,175, nearly 57% of the marital estate, even though the parties stipulated that the estate should be divided equally. The court determined that in the interest of equity, the distribution was proper even though inconsistent with the parties' stipulation. He found that misuse of marital funds by each party canceled the other's out. Each party was held responsible for his/her own personal debts, and Dan was ordered to pay any remaining joint debt. Finding that Janet might have physical and mental problems which may render her unable to obtain health insurance, the chancellor ordered Dan to furnish Janet with medical insurance coverage for a period not to exceed two years. Neither party was awarded attorney's fees, and the chancellor ordered Dan to pay court costs.

## LEGAL ANALYSIS

### I.

### WHETHER THE CHANCELLOR PROPERLY DIVIDED THE MARITAL ASSETS ACCORDING TO THE RULES OF EQUITABLE DISTRIBUTION?

The main issue in this case is the equitable distribution of marital assets, specifically the tracts of land.

At trial, Janet requested that the land be partitioned in kind, instead of her interest in the partnership being bought out. On appeal, she contends that the chancellor lacked authority to divest her title in the property when the land could and should be partitioned in kind. Janet cites Miss. Code Ann. § 11-21-3 (1972) for the proposition that when land is owned by joint tenants, Mississippi law favors that the land be partitioned in kind when possible rather than sold. She contends that the 880 acres could be partitioned in kind, granting one party Tract I, and the other party Tracts II and III.

Janet's position that the chancellor lacked the authority to divest her title in the real property by granting an equitable interest is incorrect. In *Ferguson v. Ferguson*, 639 So.2d 921 (Miss. 1994), this Court stated:

> Upon dissolution of a marriage, the chancery court has the discretion to award periodic and/or lump sum alimony, *divide real and personal property, including the divesting of title*, and may consider awarding future interests to be received by each spouse. . . .
>
> Some courts have held that equitable distribution of property has as its goal not only a fair division based upon the facts of the case, but also an attempt to finalize the division of assets and conclude the parties' legal relationship, leaving them each in a self-sufficient state, where the facts and circumstances permit total dissolution.

*Ferguson*, 639 So.2d at 929 (emphasis added). The Court went on to say:

> "We have long recognized that, incident to a divorce, the Chancery Court has authority, where the equities so suggest, to order a fair division of property accumulated through the joint contributions and efforts of the parties." *Brown v. Brown*, 574 So.2d 688, 690 (Miss.1990). In *Draper*, 627 So.2d at 305, this Court held that *the chancery court has authority to effect the divesting of title to real estate to achieve an equitable distribution of marital assets*. This is a matter committed to the discretion and conscience of the court, having in mind all of the equities and other relevant facts and circumstances. *Bowe v. Bowe*, 557 So.2d 793, 794 (Miss.1990). Moreover, the Chancery Court "has the authority to order an equitable division of jointly accumulated property and in doing so to look behind the formal state of title." *Johnson v. Johnson*, 550 So.2d 416, 420 (Miss.1989).

*Id*. at 934-35 (emphasis added).

In *Ferguson*, this Court outlined the now familiar eight factors for a chancellor to consider when equitably dividing marital property. *Id*. at 928. Those guidelines include: (1) economic and domestic contributions by each party to the marriage, (2) expenditures and disposal of the marital assets by each party, (3) the market value and emotional value of the marital assets, (4) the value of the nonmarital property, (5) tax, economic, contractual, and legal consequences of the distribution, (6) elimination of alimony and other future frictional contact between the parties, (7) the income and earning capacity of each party, and (8) any other relevant factor that should be considered in making an equitable distribution. *Id*. The most significant factors here are the concerns for future financial security and the economic and legal consequences regarding the land and partnership.

At trial Janet asserted that the equitable value of the land would increase significantly by 2002, the year most of the mortgages on the three tracts of land would be paid off. She complains that her

monetary award fails to consider the future value of the land. While Dan will own the land out-right, giving him retirement security, Janet contends that she has nothing to retire on if she is not awarded part of the marital land.

The chancellor awarded Dan the partnership and land because he is the farmer and has always run the farming operations. There is no question that Janet contributed to the household and helped the farming operation when she could. However, the evidence reveals that she had a very negligible role in the partnership. Even so, she was awarded a fifty percent equitable interest in the partnership and the land. Janet's concern over retirement is unfounded considering the monetary interest she has received from the land and partnership, as well as the award of alimony and the homestead. Awarding Janet title to a portion of the partnership land and maintaining her status as partner would require the parties to work together. In an equitable distribution proceeding, the objective is to finalize the relationship between the two parties. The chancellor's award of approximately a quarter of a million dollars, fifty-seven percent of the marital assets, is hardly an amount on which Janet will become destitute.

## II.

## WHETHER THE CHANCELLOR AWARDED JANET AN INADEQUATE AMOUNT OF ALIMONY?

Janet contends that the award of alimony of five hundred dollars a month for forty-eight months is grossly inadequate. In *Armstrong v. Armstrong*, 618 So.2d 1278 (Miss. 1993), this Court succinctly stated the well established standard of review accorded a chancellor's award of alimony on appeal:

> Alimony awards are within the discretion of the chancellor, and his discretion will not be reversed on appeal unless the chancellor was manifestly in error in his finding of fact and abused his discretion. In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion.

*Armstrong*, 618 So.2d at 1280 (internal citations omitted).

> The following factors are to be considered by the chancellor in arriving at findings and entering judgment for alimony:
>
> 1. The income and expenses of the parties;
>
> 2. The health and earning capacities of the parties;
>
> 3. The needs of each party;
>
> 4. The obligations and assets of each party;
>
> 5. The length of the marriage;
>
> 6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;

7. The age of the parties;

8. The standard of living of the parties, both during the marriage and at the time of the support determination;

9. The tax consequences of the spousal support order;

10. Fault or misconduct;

11. Wasteful dissipation of assets by either party; or

12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.

*Id*. (citations omitted).

At trial, no evidence was presented to show that Dan's health or his earning capacity was diminished. We therefore assume that Dan can and will continue to farm as he has done for twenty years. Evidence showed that Janet does have some health problems. In 1992, she had back surgery, which presumably prevents her from doing any physical labor. Janet also suffers from anxiety and depression. At trial, Janet testified that she could continue to work in the farming operation; however, she claims she is unable to return to the work place. Janet has not held a job for a substantial length of time while raising the children, tending the house, and helping with the farm operation. However, we see no reason why she cannot eventually return to the workforce, particularly in light of her previous work experience.

Janet was awarded the house and the household furnishings which were valued at a minimum of $90,000. There is no remaining debt on the house. Janet was awarded $108,725 paid for yearly in $25,000 installments for her interest in the partnership, and $58,450 to be paid in forty-five days for her interest in the land. She owns an automobile, albeit with a car note remaining. Janet has acquired a credit card debt in excess of $50,000, $30,000 of which was acquired after the separation when she was not responsible for paying any bills. However, we find that the chancellor was correct in determining that the credit card debt and Dan's expensive affair canceled each other out.

Janet testified that she needed $5,500 per month for living expenses, including the needs of their minor child, Jason. The chancellor concluded that her living expenses were "exaggerated to the point of being incredible." Dan was ordered to pay child support of $250 per month while Jason is not in college. Dan pays for the private high school tuition and will pay for college. He is required to pay all medical, dental, and car expenses for Jason. Dan testified that he would be incapable of paying more than $1,500 per month in child support and alimony. We do not see how Janet could require such a large amount of alimony, considering the amount that Dan will spend in child support and Janet's greater share of the property distribution. After reviewing the court proceedings, we conclude that the chancellor did not abuse his discretion in his award of alimony.

### III.

### WHETHER THE CHANCELLOR IMPROPERLY DENIED JANET'S MOTION TO RE-OPEN THE TRIAL?

On November 28, 1995, Janet filed a motion to re-open the proceedings. The motion to re-open alleged that the thirty-minute hearing on November 21, 1995, was inadequate. The November 21 hearing was held to put into evidence Dan's credit card statements. Janet alleges that these statements reflect the amount of money that Dan spent on his paramour. The motion to re-open also alleged that the 1995 crops had been sold and that Janet should receive her 30% interest. Janet also urged the court to consider new debt that she incurred for the operation of the partnership.

During trial, it became apparent that some of Dan's credit card statements had not yet been received. Janet wanted to use these statements to prove expenditures by Dan on his paramour. The chancellor granted a continuance for a thirty-minute hearing to be held on November 21, 1995. Janet's attorney conceded that these credit card statements were the only remaining consideration for the court. At the hearing, Janet entered the credit card statements into evidence. They reflect that from February, 1993, through June, 1995, Dan charged a total $11,725.80. After thirty minutes, Janet was not finished but was forced to conclude examination of Dan regarding the charges. The chancellor ruled that Janet could make a written proffer of proof. Testimony at the hearing was of little significance, because Dan could not remember much about the expenditures. Admission of the credit card statements, reflecting that Dan charged $11,725.80 over a sixteen-month period, was sufficient to satisfy the needs of the chancellor in determining that both parties misused marital funds.

Janet also requested that the court re-open the proceedings to examine the 1995 crop revenue and any new debt created through the partnership. Janet failed to mention the 1995 crop revenue at trial or in the pretrial proceedings. In *Burcham v. Estate of Burcham*, 303 So.2d 476 (Miss. 1974), this Court stated:

> Even where a motion to reopen is appropriate and timely, it is essential that it be shown that there is newly discovered evidence, which was not known to movant at the time of trial, and that such evidence is of such character and of such probative value as reasonably may be calculated to change the result. Moreover, it must be shown that movant had been diligent and that failure to discover and present the evidence in the first instance had not been due to negligence on his part.

*Burcham*, 303 So.2d at 480 (citation omitted). Janet knew or should have known about the 1995 crop revenue well before the motion to re-open was made. Janet's attorney agreed on September 26 that Dan's credit cards were the only issue remaining. Furthermore, when the accountant determined the value of the partnership, it stands to reason that he took into consideration both the cost of production and the profits for the 1995 crop. If Janet disagreed with the estimate, she should have presented evidence at trial to dispute it. We find no error in the chancellor's refusal to re-open the case.

## IV.

### WHETHER THE CHANCELLOR ERRED BY NOT AWARDING JANET ATTORNEY'S FEES ?

The chancellor refused to award Janet attorney's fees. Generally, the award of attorney's fees in divorce cases is left to the sound discretion of the chancellor. *Lenoir v. Lenoir*, 611 So.2d 200, 204 (Miss. 1992); *Cheatham v. Cheatham*, 537 So.2d 435, 440 (Miss. 1988) (citing *Holleman v.*

*Holleman*, 527 So.2d 90, 95 (Miss. 1988); *Carpenter v. Carpenter*, 519 So.2d 891, 895 (Miss. 1988); *McKee v. McKee*, 418 So.2d 764, 767 (Miss. 1982)). Absent an abuse of discretion, the chancellor's award of attorney's fees is upheld. *Armstrong*, 618 So.2d at 1282; *Martin v. Martin*, 566 So.2d 704, 707 (Miss 1990); *Kergosien v. Kergosien*, 471 So.2d 1206, 1212 (Miss. 1985); *Ladner v. Ladner*, 436 So.2d 1366, 1375 (Miss. 1983).

An award of attorney's fees is inappropriate when the moving party has the ability to pay. *Brooks v. Brooks*, 652 So.2d 1113, 1120 (Miss. 1995) (quoting *Hammett v. Woods*, 602 So.2d 825, 830 (Miss. 1992)); *See also Martin v. Martin*, 566 So.2d 704, 707 (Miss. 1990). Where the record reflects an inability to pay and a financial disparity between parties, then this Court will find no error. *Brooks*, 652 So.2d at 1120 (quoting *Hammett*, 602 So.2d at 830); *See also Powers v. Powers*, 568 So.2d 255, 259 (Miss. 1990). The record must reflect the party's inability to pay. *Brooks*, 652 So.2d at 1120; *Benson v. Benson*, 608 So.2d 709, 712 (Miss. 1992). In this case, Janet was awarded approximately a quarter of a million dollars. Clearly this sum would allow Janet to pay her own attorney's fees. The chancellor did not err in refusing to award Janet attorney's fees.

V.

**WHETHER THE CHANCELLOR IMPROPERLY DENIED JANET'S MOTION FOR AMENDMENT OR NEW TRIAL AND FOR RECUSAL?**

On January 5, 1996, Janet filed a motion for amendment of findings, clarification of law, for new trial on certain issues or, alternatively a new trial on all issues, and for recusal of the chancellor.

### A. Pre-Trial Conference

Janet asserts that the Washington County Chancery Court has a local rule that requires a pre-trial conference. Janet maintains that this rule violates Miss. R. Civ. P. Rule 16. She also alleges that the pre-trial conference held in the instant case violated U.C.C.R. Rule 3.09.

The local rule of the Washington County Chancery Court is not in the record. However, taking Janet's allegations as true, the local rule does violate Miss. R. Civ. P. Rule 16, which states: "In any action the court *may*, on the motion of *any party*, and shall on the motion of *all parties* to the cause, direct and require the attorneys for the parties to appear before it at least twenty days before the case is set for trial for a conference . . ." Miss. R. Civ. P. Rule 16 (emphasis added). The comment to Rule 16 states, "First, the rule provides that pretrial conferences *may* be held on the motion of any party and *shall* be held on the motion of all parties. This provision was drafted to curb arbitrary local requirements that pretrial conferences be held in every action; as Judge J. Skelly Wright pointed out, above, routine cases probably do not require the attention of the court prior to trial." Clearly a local rule requiring a pretrial conference where neither party has made a motion requesting one violates Miss. R. Civ. P. 16.

U.C.C.R. Rule 3.09 states, "Oral agreements of counsel made in presence of the Court must be recorded by the Court Reporter, or an order entered in accordance therewith approved by counsel. All other agreements should be reduced to writing and filed among the papers in the case." The record lacks any formal record or writing reflecting the pretrial conference and the parties' agreement. As a result, the local rule requiring the pretrial conference also violates U.C.C.R. Rule

3.09, as applied in this case.

We therefore order that the Washington County Chancery Court local rule requiring a pretrial conference be abolished. However, because Janet waived this issue by failing to object before the lower court's judgment and because no prejudice resulted from the pretrial conference in this case, we do not reverse on this issue.

## B. Recusal

After the chancellor ruled on the case, Janet filed a motion which among other things, stated that the chancellor should have recused himself. Janet bases the recusal claim on the notion that the chancellor and the attorney for Janet, Mr. Swain, do not get along personally. In support of her contention, Janet points to the chancellor's admonishing her attorney for filing a potentially frivolous motion to compel, the denial of her motion to re-open the case along with sanctions against her attorney for filing the frivolous motion, notation by the chancellor of Janet's uncooperative behavior during the proceedings, the transfer of other pending cases handled by her attorney's firm to another chancellor, and the chancellor's refusal to grant additional time at the November 21 hearing.

Janet cites *Davis v. Neshoba County General Hosp.*, 611 So.2d 904 (Miss. 1992), for the premise that personal tension between the judge and counsel warrants recusal. In *Davis*, this Court reversed a judge's refusal to recuse himself, because he had a conflict of interest stemming from his prior representation of one of the parties and because of the personal tension existing between the judge and one of the attorneys. During the recusal hearing, interchanges revealed animosity stemming from a prior case where the attorney had accused the judge of being racially biased. *Davis*, 611 So.2d at 905. The Court cited Canon 3(C)(1) of the Code of Judicial Conduct, which requires disqualification of a judge when his or her impartiality "might reasonably be questioned, including but not limited to instances where: (a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. . . ." In other words, "would a 'reasonable person, knowing all the circumstances, harbor doubts about [the judge's] impartiality?'" *Davis*, 611 So.2d at 905 (citations omitted).

Dan claims that no personal tension existed between the chancellor and Janet or Janet's counsel. He contends that Janet untimely filed the motion for recusal after the chancellor had ruled on the merits of the case. This Court has held that timing and diligence are a consideration:

> Minor [Movant] did not move that Judge Dunnam recuse himself until after the merits had been decided adversely to him, and in such a context we have, over the years, been quick to point out that we will not allow a party to take his chances with a judge about whom he knows of grounds for recusal and then, after he loses, file his motion. Where the party knew of the grounds for the motion or with the exercise of reasonable diligence may have discovered those grounds, and where that party does not move timely prior to trial, the point will be deemed waived. *Ryals v. Pigott*, 580 So.2d 1140, 1175-76 (Miss.1990); *City of Biloxi v. Cawley*, 332 So.2d 749, 750 (Miss.1976); *McCune v. Commercial Publishing Co.*, 148 Miss. 164, 172, 114 So. 268, 269 (1927).

*Buchanan v. Buchanan*, 587 So.2d 892, 897 (Miss. 1991).

A careful review of the record reveals that the chancellor in no way acted partially so as to mandate recusal or a new trial. The transcript demonstrates simply that the chancellor is expedient and requires strict adherence to court rules and decorum. We fail to see the type of tension or conflict of interest described in *Davis* here. The chancellor did not act improperly by refusing to recuse himself.

## MOTION FOR COSTS ON APPEAL

Janet filed a motion for attorney's fees and costs for the appeal to be paid for by the appellee Dan. The motion was filed with this Court on May 14, 1997, and states that the costs of the appeal and the attorney's fees equal $5,220. Janet claims she is without adequate funds to pay these costs. She cites no legal authority compelling this Court to grant her motion.

Janet was awarded equitable interest valued at over a quarter of a million dollars in the divorce decree. We see no reason why Janet is incapable of paying $5,220 in costs and attorney's fees on appeal.

## CONCLUSION

The chancellor equitably divided the marital assets so as to finalize the parties' relations. Janet received more than the equal division stipulated by the parties. She is not entitled to any more. The chancellor conducted a fair and equitable trial. We therefore affirm the findings of the trial court in this case.

**AFFIRMED.**

**LEE, C.J., PRATHER, P.J., PITTMAN, BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**