566 So.2d 704 (1990)
Nancy B. MARTIN
v.
Larry MARTIN.
No. 89-CA-0795.
Supreme Court of Mississippi.
August 8, 1990.
*705 Eugene C. Tullos, Tullos & Tullos, Raleigh, R.K. Houston, Jr., Bay Springs, for appellant.
Aleita M. Sullivan, Mendenhall, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and BLASS, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Nancy Martin (Nancy) filed suit for divorce from Larry Martin (Larry) in the Chancery Court of Smith County, Mississippi, on the ground of habitual cruelty and inhuman treatment. She also sought custody of the parties' three minor children, support and alimony, and adjudication of their respective interests in certain real and personal property. Larry filed a counterclaim seeking a divorce on the ground of adultery and also sought custody of the children and division of the property. On June 9, 1989, the lower court granted a divorce to Larry, granted custody of the children to Nancy, and adjudicated the property rights between the parties. Nancy has appealed and presents eight (8) issues for decision. Larry has cross-appealed and presents three (3) issues for decision.

FACTS
The parties were married March 23, 1965, in Smith County, Mississippi. Nancy was sixteen (16) years of age and in the tenth (10th) grade; Larry was twenty (20) years old. The record reflects that both these young people were energetic, industrious, intelligent, and that they accumulated more than modest means. Sadly, as often happens, after producing four (4) children and establishing themselves, something happened to shadow their relationship, marriage and family. In the beginning, the parties lived in Raleigh from 1966 to 1972 then moved to Vicksburg. Nancy entered cosmetology school but quit when her first child, Paula, was born in June 1969. When Paula was three years old, Nancy concluded her beauty course and began working.
On May 23, 1970, the parties bought 101 acres of land from Larry's father at a reduced price, the deed being made to Larry alone. They executed a note and deed of trust covering the land in the sum of $7,500.00, payable at $75.00 per month for eight (8) to ten (10) years. The parties moved back to Raleigh where Larry began working for his father, wiring houses at a pay rate of $75.00 per week. Nancy worked as a beautician earning $75.00 to $100.00 per week.
In 1973, Larry joined a carpenter's union and Nancy quit her job a month before their son, Todd, was born on December 10, 1973. She resumed work at a beauty shop in Raleigh in 1975 and worked there until approximately a month before their second daughter, Jamie, was born April 22, 1977. After joining the carpenter's union in 1973, Larry worked at the Grand Gulf Nuclear Power Plant in Port Gibson and on various other jobs until 1983. From that time until 1988, Larry worked fairly steadily, subject to a few short layoffs, with Bechtal Corporation at Grand Gulf. His last hourly pay scale was $13.62.
In 1976, Larry's parents deeded to him and Nancy, as joint tenants by the entirety, four acres of land. Larry and Nancy borrowed money and built a home on the property, secured by a note and deed of trust. At the time of trial, the balance of the mortgage was approximately $28,000.00. When she was not having children, and until the babies were old enough, Nancy worked part-time at a beauty shop and part-time at her parents' grocery store and cafe earning from $75.00 to $100.00 per week. The fourth child, Joshua, was born June 9, 1981. Nancy returned to work approximately six weeks after his birth and continued until 1985.
*706 In June 1985, the parties bought from Larry's parents five acres of land located directly across the road from the parents' home. The land was conveyed to them as tenants by the entirety. The property had two commercial chicken houses on it and Larry and Nancy borrowed money, and built a third chicken house on the property. At the time of trial, approximately $80,000.00 was owed on the property.
The parties began raising chickens for commercial sale under contract with McCarty Farms, Inc. At the time, Larry was working eight (8) to sixteen (16) hours per day, from five to seven days per week and drove about five hours to and from work. Nancy was primarily responsible for the chickens during the time Larry was away.
The parties continued to prosper and, apparently, the family continued to live happily, until Jim Applewhite, broiler serviceman on their farm for McCarty Farms, Inc., entered the picture. Larry was laid off from Grand Gulf in January 1988, and remained unemployed except for the poultry operation, until the time of trial. In March 1988, Larry discovered that Nancy was having an affair with Jim Applewhite. He threw Nancy's diamond engagement ring into the pond; continued to live in their house, but did not have sexual relations with her; and did not want to continue the marriage. Suffice to say, the divorce followed and during the trial, Nancy admitted her relationship with Jim Applewhite and meeting him at her home and the home of her parents. At trial, Jim Applewhite testified, confessing specifically to his part in the illicit affair.
The chancellor entered judgment granting the following relief:
(1) Larry was entitled to divorce on the ground of adultery.
(2) Nancy was found not to be unfit for the custody of the children and custody was awarded to her. Liberal visitation rights were granted to Larry.
(3) The four acre chicken farm tract and the home and five acres and farm equipment was adjudicated to be jointly owned by the parties, they were ordered to be appraised and each party was to be given the opportunity to purchase the interest of the other party. Otherwise, the proceeds of the sale was ordered divided equally between the parties.
(4) The 1986 Chrysler Fifth Avenue automobile was awarded to Nancy and the other vehicles, e.g., 1973 pulpwood truck, a 1973 Ford four wheel drive truck, 1982 Nissan Sentra automobile, and a welding machine, cutting torch and welding equipment, were granted to Larry.
(5) Nancy was held to and entitled to own a twenty (20%) percent interest in the 101 acre tract of land.
(6) Larry would have use of the home of the parties until its disposition under the terms of the decree.
(7) Permanent support for the children was not be determined until disposition of the four acre tract and five acre tract.
(8) Each party pay his/her attorney's fees and the costs of the proceeding be divided equally between them.

LAW

I.

NANCY WAS ENTITLED TO A DIVORCE ON GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT?

II.

NANCY WAS ENTITLED TO ATTORNEY'S FEES.

III.

EVIDENCE SHOULD NOT BE REQUIRED TO ESTABLISH THE McKEE FACTORS FOR ATTORNEY'S FEES.

IV.

THE CHANCELLOR ERRED IN FAILING TO REQUIRE LARRY TO PAY ALL OF THE COURT COSTS.
Nancy contends she was (1) entitled to divorce on the ground of habitual cruel and inhuman treatment, (2)(3) attorney's fees, (4) court costs. To the first contention, *707 we apply the established principle that, on a finding of fact, this court will not reverse the chancellor unless it is determined that he was manifestly wrong in that finding. Cheatham v. Cheatham, 537 So.2d 435, 442 (Miss. 1988); Wood v. Wood, 495 So.2d 503, 505 (Miss. 1986). The chancellor granted the divorce on the ground of adultery. The proof was overwhelming on that ground, i.e., Nancy and her paramour both testified in open court sustaining the ground.
With regard to attorney's fees and court costs, the lower court found that both parties were equally vested with the property, except for the 101 acres, wherein he determined that Nancy had a lesser interest. Their respective incomes and ability to gain income were practically the same. Nancy did not attempt to demonstrate her inability to pay attorney's fees. If a party is financially able to pay her attorney, an award of attorney's fees is not appropriate. Cheatham, 537 So.2d at 440; Carpenter v. Carpenter, 519 So.2d 891, 895 (Miss. 1988); Cameron v. Cameron, 276 So.2d 449 (Miss. 1973); Nichols v. Nichols, 254 So.2d 726 (Miss. 1971). The determination of attorney's fees in divorce cases is largely a matter which is entrusted to the sound discretion of the chancellor, particularly where the equities are as evenly divided as here. Likewise, that rule applies to court costs. Holleman v. Holleman, 527 So.2d 90 (Miss. 1988); Devereaux v. Devereaux, 493 So.2d 1310 (Miss. 1986); Dillon v. Dillon, 498 So.2d 328, 331 (Miss. 1986); Ladner v. Ladner, 436 So.2d 1366, 1375 (Miss. 1983).
The above assigned errors are rejected.

V.

NANCY WAS ENTITLED TO AN EQUITABLE DIVISION OR LUMP SUM ALIMONY OF ONE-HALF INTEREST IN 101 ACRE TRACT.
Nancy contends that she was entitled to one-half interest in the 101 acre tract, while Larry claims that the chancellor erred in granting her a twenty (20%) percent interest since, for all practical purposes, his father reduced the price to such figure that was equivalent to giving the property to him; and that the money paid was solely at the insistence of Larry. He takes the position that he was responsible for the pay-back for the land. The contention of each party does not render equity to the other. The learned chancellor, exercising the wisdom of Solomon, sliced the 101 acre tract twenty (20%) percent to Nancy and eighty (80%) percent to Larry.[1] Under the facts and circumstances surrounding these parties in all their transactions and particularly in the acquisition and use of the 101 acre tract, we cannot say that the chancellor was manifestly in error and that the division was not an equitable one. Robinson v. Irwin, 546 So.2d 683, 685 (Miss. 1989); Jones v. Jones, 532 So.2d 574, 580-581 (Miss. 1988); Dillon v. Dillon, 498 So.2d 328, 330-331 (Miss. 1986); Rives v. Rives, 416 So.2d 653, 657 (Miss. 1982).
The assigned error number five is rejected.

VI.

NANCY SHOULD HAVE BEEN AWARDED THE RIGHT TO OPERATE THE CHICKEN FARM.

VII.

NANCY WAS ENTITLED TO ALIMONY AND CHILD SUPPORT, WHICH WOULD INCLUDE USE AND POSSESSION OF THE PARTIES' HOME.
Nancy contends (6) that she should have been awarded the right to operate the chicken farm. Without question, Nancy could probably operate the farm as well as Larry. Their experience was about equal. The chancellor gave Larry the right to operate the farm until its disposition under the final terms of the decree. The farm was probably by far the most valuable asset of the parties. As people in the poultry *708 industry know, it is also an asset that quickly depreciates and deteriorates in value. Again, we cannot say that the chancellor was manifestly wrong in his disposition of that asset. See, Jones v. Jones, 532 So.2d 574, 580-581 (Miss. 1988); Dillon, 498 So.2d at 331; Watts v. Watts, 466 So.2d 889, 891 (Miss. 1985).
Nancy next contends that the lower court should have granted her alimony and child support, including use and possession of the parties' home. The chicken farm is in close proximity to the home. The parties operated the farm themselves and the dwelling house was the base of those operations. Where the owners themselves do not physically operate the farm but do so by a tenant, the industry is aware that the common procedure is for the owner to build a tenant house and his operator/producer lives there and looks after the poultry. The house was a necessary part of the operation of the chicken farm and as such was properly awarded to Larry. With respect to the issue of alimony, Nancy received one-half of the proceeds from the operation of the farm and was provided with substantial income for her and the children. Further, aside from the 101 acre tract of land, the chancellor divided the property equally. The chancellor was not manifestly in error on this issue. McNally v. McNally, 516 So.2d 499, 501 (Miss. 1987); Martin v. Martin, 271 So.2d 391 (Miss. 1972).
The chancellor ordered that the parties' pretrial arrangement on child support be continued temporarily pending disposition of the home and chicken houses. Therefore, this cause must be remanded for the purpose of fixing permanent child support.
The assigned error seven has merit and will be affirmed in part and remanded in part for the purpose of fixing and awarding permanent child support.

VIII.

THE CHANCELLOR SHOULD HAVE REQUIRED LARRY TO PAY NANCY ONE-HALF OF THE INCOME TAX REFUND CHECK
The assigned error number eight was not thoroughly litigated in the trial below. However, the record does reflect that there was an income tax refund check for the year 1987; that it was payable to both parties and had not been negotiated; and that the reason was because of a dispute over a butane bill for the chicken farm, which Nancy was supposed to pay. The check should be negotiated and the proceeds divided equally between the parties.
Assigned error number eight has merit and the judgment of the lower court is reversed and rendered, and the cause is remanded for the purpose of an equal division of the refund.

CROSS-APPEAL
On cross-appeal, Larry contends that (1) the chancellor erred in allowing the introduction of a deed of trust into evidence; (2) the chancellor erred in allowing Nancy a twenty (20%) percent interest in the 101 acres of land and (3) the chancellor erred in not awarding Larry the care and custody of the minor children.
At the outset, we note that the issue of the chancellor's division of the 101 acres of land has been discussed on direct appeal and the conclusion there applies to this issue. Next, we find no merit in cross-appellant's assigned error involving the introduction of the deed of trust into evidence. Clark v. Mississippi Power Co., 372 So.2d 1077 (Miss. 1979).
Lastly, with respect to custody of the children, the chancellor made the following findings:
The Court finds that the parties should be granted a divorce, or that the husband should be granted a divorce on the ground of adultery; that the Court is not finding that the mother is unfit to have the care and custody of the children. And, under the circumstances, the Court is of the opinion and adjudicates that the custody will be awarded to the mother, with the right of reasonable visitation.
The Court has observed through the testimony that the children at times do *709 go unsupervised. I hope that the fact coming out in court will be taken into consideration and it will be corrected. If the children are not supervised, then, at a later time, that matter can be taken care of by the Court. The Court is going to order that they be under supervision at all times. And the Court is going to order also, that the parties here, the father and the mother and these  Todd in particular  seek counseling to try to get the parties adjusted in such a way that the visitation that the Court is going to grant will be carried out.
The chancellor made the above findings after hearing all of the evidence, we cannot say with reasonable certainty that his award of custody of the children to Nancy was manifestly wrong and against the overwhelming weight of the evidence. Carr v. Carr, 480 So.2d 1120, 1123-1124 (Miss. 1985).
The judgment of the lower court is affirmed on cross-appeal.
AFFIRMED IN PART AND REVERSED AND REMANDED IN PART ON DIRECT APPEAL. AFFIRMED ON CROSS-APPEAL.
HAWKINS, P.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] I allude to the decision King Solomon made when two women, each claiming to be the mother of a small child, appeared before him. The King ordered a sword to be produced and the child to be cut in two pieces and one part delivered to each woman. Horrified, the true mother disclaimed any interest rather than see her baby slain. The false mother did not retreat from her position. The King wisely ordered the child to its real mother. 1 Kings 3:17-27.