770 So.2d 1007 (2000)
Matilda PACHECO, Appellant,
v.
David J. PACHECO, Appellee.
No. 1998-CA-01482-COA.
Court of Appeals of Mississippi.
October 31, 2000.
*1008 Carmen Gettis Castilla, Jackson, Attorney for Appellant.
Debra Lynn Allen, Jackson, Attorney for Appellee.
BEFORE KING, P.J., BRIDGES, AND MOORE, JJ.
MOORE, J., for the Court:
¶ 1. Appellant Matilda Pacheco (Matilda) filed a complaint for divorce in the Madison County Chancery Court on November 21, 1996, alleging habitual cruel and inhuman treatment, or in the alternatively, irreconcilable differences. The parties consented to a divorce by irreconcilable differences and submitted certain matters to be determined by the chancellor. The chancellor granted the divorce, which included the award of full custody of the parties's daughter to David Pacheco (David). The chancellor did not award any alimony or attorney's fees. Aggrieved by this decision, Matilda presents the following issues on appeal:
I. THE LOWER COURT ERRED IN AWARDING CUSTODY OF THE MINOR CHILD TO THE APPELLEE, DAVID PACHECO.
II. THE CHANCELLOR ERRED IN FAILING TO AWARD ALIMONY TO APPELLANT.
III. THE CHANCELLOR ERRED IN FAILING TO AWARD ATTORNEY'S FEES TO APPELLANT.
Finding no merit in issues one and three, this Court affirms the chancellor's findings on these assignments of error. For lack of proper evaluation of the factors involved under issue two, we remand this issue to the chancellor to conduct a proper assessment of such factors.

STATEMENT OF THE FACTS
¶ 2. Matilda and David were married in 1986 and had one child that was born in 1991. At the time of the trial, the parties had been residents of Madison, Mississippi for at least six years. Matilda filed the complaint on November 21, 1996, on the grounds of habitual cruel and inhuman treatment, or in the alternative, irreconcilable differences. David filed his answer on December 13, 1996, denying the allegations set forth in the complaint. Matilda requested temporary relief, and a hearing was held on such matters, and an order for temporary support was entered into on February 21, 1997. The parties consented to a divorce on the grounds of irreconcilable differences and submitted certain matters to be determined by the chancellor. Included among those issues was the entitlement of either party to alimony (lump sum, periodic or rehabilitative), custody of the minor child, visitation and child support for the minor child, equitable division of the marital assets, including David's pension and retirement plans and I.R.A., and whether either party should be awarded attorney's fees.
¶ 3. David has a B.S. degree in civil engineering and is a registered professional engineer. He is employed with the U.S. Department of Agriculture as a construction engineer and as of the time of the trial, has been an employee there for sixteen years. At that time, David earned $53, 946 annually. Matilda has a high school education and has taken cosmetology courses, but is not licensed. She has been a full time mother and homemaker until approximately one year prior to the divorce. At that time she became employed with Hancock Fabrics in Jackson, Mississippi, earning an average of $727 per month.
*1009 ¶ 4. David's main job responsibility is to provide assistance to project engineers around the state. Beginning in October 1996, he took a temporary assignment in Natchez which required him to be in Natchez during the week. The chancellor, by way of temporary relief, ordered that the child, who was not yet of school age, would alternate spending two weeks with each parent. David finished the assignment in Natchez at the end of 1997, at which time he returned to his home in Madison.
¶ 5. The parties owned a home in Madison. David had an I.R.A. and two retirement/pension funds. Matilda had negligible, if any, retirement benefits accumulated. The parties had previously prepared the division of the personal property, including the home furnishings and automobiles, which the chancellor found to be reasonable.
¶ 6. The final judgment of divorce was entered on June 15, 1998. Full custody of the daughter was awarded to David, with liberal visitation rights granted to Matilda. The chancellor found that Matilda was entitled to a fifty percent share of the marital assets, with a $6,300 deduction which was applied to offset some monies she had withdrawn on a credit card. Upon a motion filed by Matilda, a hearing was conducted concerning amending a portion of the final judgment. The opinion and final judgment were amended to reflect the correct balance of David's retirement accounts which had accumulated during the marriage and totaled $92,689.17. Therefore, Matilda's half interest was determined to be $46,344.58, less the $6,300, coming to an award of $40,044.58. In addition, the judgment awarded the former marital home to David if he was able to pay Matilda for her share of the equity, which the chancellor determined to be $9,804.50, or it was to be sold with the proceeds to be divided equally. The chancellor did not award any alimony or attorney's fees. It is from these findings that Matilda filed this appeal.

LAW AND ANALYSIS

I. DID THE LOWER COURT ERR IN AWARDING CUSTODY OF THE MINOR CHILD TO THE APPELLEE, DAVID PACHECO?
¶ 7. Appellant Matilda asserts that the chancellor erred in failing to award custody of their daughter to her. She contends that the chancellor did not properly weigh the factors in making his determination. Applying the proper standard of review, this Court finds that the chancellor did not commit error in making his decision.
¶ 8. The appropriate standard of review for this Court is well settled: "Our scope of review in domestic relations matters is limited by our familiar substantial evidence/manifest error rule." Stevison v. Woods, 560 So.2d 176, 180 (Miss.1990). The word "manifest" as used in this context is defined as "unmistakable, clear, plain, or indisputable." Magee v. Magee, 661 So.2d 1117, 1122 (Miss.1995) (quoting Black's Law Dictionary 963 (6 th ed.1990)). The chancellor's findings of fact will not be reversed if there is any substantial credible evidence which supports it. Dunaway v. Busbin, 498 So.2d 1218, 1221 (Miss. 1986). Therefore, if there is supporting evidence and "even if this Court disagreed with the lower court on the finding of fact and might have arrived at a different conclusion, we are still bound by the chancellor's findings unless manifestly wrong." Richardson v. Riley, 355 So.2d 667, 668 (Miss.1978). The Mississippi Supreme Court in Albright v. Albright, 437 So.2d 1003 (Miss.1983) set forth the factors that a chancellor is supposed to consider in making a child custody determination. In reviewing the chancellor's application of these factors in the present case, it is evident that there is credible, substantial evidence to support his finding that custody of the child should be awarded to David, and that those findings were not manifestly in error. Therefore, we affirm.
*1010 ¶ 9. The Albright factors have been established as follows:
A. Age of child
B. Health of child
C. Sex of child
D. Continuity of care
E. Best parenting skills
F. Willingness and capacity to provide primary care
G. Parents's employment and responsibilities of such
H. Physical and mental health and age of parents
I. Emotional ties of parent and child
J. Moral fitness of parents
K. Home, school, and community record of the child
L. Preference of the child (at the age sufficient to express preference by law)
M. Stability of home environment and employment of parents
¶ 10. Age, health, and sex of childThe minor child is a healthy female who was six years old at the time of the trial. The chancellor discussed this in his opinion. Matilda argues that the fact that her child is a female is one of the main reasons why custody should be awarded to her. This line of reasoning is without merit.
¶ 11. Continuity of careIn September of 1996, prior to the breakup of the marriage, Matilda moved David's belongings from the martial bedroom, announcing that they should consider themselves separated from that point on. The chancellor found that up until that point, Matilda was the primary caregiver. From the testimonies, the chancellor found that after this point Matilda started spending a lot of time away from the home and her child. She was frequently going out at night, and sometimes not coming home at all. It was at this point that David became the primary care giver. The chancellor stated that he found that both parents had taken care of the child.
¶ 12. Best parenting skills, and willingness and capacity to provide primary careThe chancellor found that both parents were willing and capable of taking care of their child. However, the evidence at trial revealed that David was the parent providing a cleaner home, balanced meals for the child, and was taking the time to get the child ready for bed and school in the mornings.
¶ 13. Parents's employments and responsibilities of suchBoth parents are employed. David works "flex-time" and can arrange his schedule to accommodate his child's needs. Matilda has brought her daughter with her to work on occasion, which has posed no problems as of date.
¶ 14. Physical and mental health and age of parentsBoth parents are roughly the same age and are both in good physical health. There was no testimony to indicate that David is other than in good mental health. There was testimony that in the recent past, Matilda had the recognizance of suppressed memories of sexual abuse as a child. This caused her severe emotional problems, leading her to seek professional help. There was no professional, expert testimony as to her present condition however.
¶ 15. Emotional ties of parent and childBoth parents are equally emotionally tied to their daughter. Both have an immense concern for her well-being.
¶ 16. Moral fitness of parentsThe chancellor found there to be some evidence that David had been dating someone since the separation, but that it was broken off prior to the trial. The chancellor further found from testimony given at trial that Matilda was dating a man whom she has stay over at her house two to three nights a week. This man also gives Matilda thirty to forty dollars each week to help pay for his groceries.
¶ 17. Home, school, and community record of the childThe chancellor determined that David took his daughter to church with him. The chancellor stated *1011 that there was no evidence as to religious activity taking place with Matilda and her daughter since the separation. There was no school, home, or community records presented other than this.
¶ 18. Preference of the childBy law, the minor child is not of the age to state her preference as to a custodial parent.
¶ 19. Stability of home environment and employment of parentsThe chancellor noted that David is much more stable in this area. He has been in the same job for approximately sixteen years. Matilda has only been employed at Hancock Fabrics for a little over a year.
¶ 20. It is apparent from the evidence and trial record, as well as the findings made by the chancellor, that the determination that full custody be awarded to David was supported by credible, substantial evidence. The chancellor's findings were not manifestly in error. Abiding by our standard of review, this Court affirms this ruling.

II. DID THE CHANCELLOR ERR IN FAILING TO AWARD ALIMONY TO APPELLANT?
¶ 21. The chancellor did not award any type of alimony in this case. Under this assignment of error, Matilda asserts that the chancellor committed error in failing to do such. Although Matilda makes various assertions under this issue, one argument raised was that the chancellor did not consider the appropriate factors before determining that no alimony should be awarded. This Court agrees with that argument. Since the chancellor failed to properly consider the factors necessary in making such a finding, we remand this issue so that the chancellor can apply and weigh the required factors before making a determination concerning alimony.
¶ 22. It is well settled law that alimony awards are within the discretion of the chancellor. McEachern v. McEachern, 605 So.2d 809, 814 (Miss.1992). This Court will not reverse his decision on appeal "unless the chancellor was manifestly in error in his finding of fact and abused his discretions." Powers v. Powers, 568 So.2d 255, 257 (Miss.1990). However, it has also been determined that there are particular factors that a chancellor must consider in making an alimony award determination. The chancellor is to consider the following factors in arriving at his decision:
A. The income and expenses of the parties
B. The health and earning capacities of the parties
C. The needs of each party
D. The obligations and assets of each party
E. The length of the marriage
F. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care
G. The age of the parties
H. The standard of living of the parties, both during the marriage and at the time of the support determination
I. The tax consequences of the spousal support order
J. Fault or misconduct
K. Wasteful dissipation of assets by either party
L. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support
¶ 23. In the chancellor's opinion, the analysis and determination concerning an award of alimony was extremely general. The opinion stated as follows:

Alimony: I find that Matilda, while presently employed at only minimum wage, is not working full-time through her own choosing. Further, she is, according to all testimony, a graduate cosmetologist, and if she so chooses, is capable of earning far in excess of her present income. She also receives somewhere between thirty and forty dollars a week from her lover to supplement her household expenses. Due to these factors, I do not find that she is entitled to an award of alimony.
*1012 It is evident from this statement that the chancellor did not properly consider all the required factors. In the absence of specific findings, we cannot clearly understand how the chancellor reached his decision not to award alimony to Matilda. It is because of this improper analysis that we cannot affirm his decision with confidence that he reached the correct result. Therefore, we remand this issue so that the chancellor can apply and consider the appropriate factors and provide specific findings of fact.

III. DID THE CHANCELLOR ERR IN FAILING TO AWARD ATTORNEY'S FEES TO APPELLANT?
¶ 24. In arguing this assignment of error, Matilda asserts that in examining the evidence in light of the factors as set forth in McKee v. McKee, 418 So.2d 764, 767 (Miss.1982), it should have been clear to the chancellor that she should have been awarded attorney's fees. She contends that the chancellor therefore committed error in not awarding such. This Court has found that the factors as set out in McKee are to be used to determine the appropriate amount of attorney's fees to be awarded, if the decision to award such fees had already been made. The question we have at hand requires the application of the standard for determining whether or not attorney's fees should be awarded at all, not the actual, appropriate amount of those fees to be awarded. After applying the correct standard, this Court finds that the chancellor's decision to deny the award of attorney's fees was not an abuse of discretion.
¶ 25. In examining McKee, we found that the factors laid out by the supreme court were to be used in figuring the appropriate amount of attorney's fees to actually be awarded. Looking to the language in the opinion, the supreme court stated:
In determining an appropriate amount of attorney's fees, a sum sufficient to secure one competent attorney is the criterion by which we are directed. [citation omitted] The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.
Id. (emphasis added). These are the factors as argued by Matilda. It is evident by looking at the language of this opinion and of the factors themselves, that these such factors are to be considered by the chancellor in determining the particular amount to be awarded, not in deciding whether or not attorney's fees should be awarded at all, and that is the issue before us at present.
¶ 26. The Mississippi Supreme Court has set forth the standards for this area of the law. "As with alimony, the determination of attorney's fees in largely within the sound discretion of the chancellor." Magee v. Magee, 661 So.2d 1117, 1127 (Miss.1995) (quoting Smith v. Smith, 614 So.2d 394, 398 (Miss.1993)) (citing Martin v. Martin, 566 So.2d 704 (Miss. 1990)). In addition, the general rule as to whether or not awarding attorney's fees is appropriate has been established. The courts follow the rule that where "a party is financially able to pay her attorney, an award of attorney's fees in not appropriate." Martin, 566 So.2d at 704. Furthermore, in Watson v. Watson, 724 So.2d 350, 357 (Miss.1998), the court found that the wife should not have been awarded attorney's fees because the assets she received from the distribution of the marital assets enabled her to pay attorney's fees. We shall follow the same standard here.
¶ 27. In this case, as noted by the chancellor in his opinion, Matilda was financially able to pay her attorney's fees. The chancellor stated: "Matilda will have resources to pay her attorney upon receipt of her share of the division of the savings bond and/or the equity in the home." In *1013 the amended final judgment of divorce, the chancellor found that the Thrift Savings Plan through David's employer, USDA, amounted to $81,314.28, of which half would be awarded to Matilda. The chancellor further found that Matilda is entitled to 50% of the retirement accounts, minus a surcharge of $6,300, which leaves her an award of $40,044.58. Matilda is also entitled to one-half interest in the equity of the marital home, which leaves her with a sum of $9,804.50. Furthermore, Matilda shall receive half of the U.S. savings bonds, awarding her a sum of $1,110.
¶ 28. Matilda argues that she should have been granted an award of $4,394.25, which was the total amount she owed in attorney's fees. In analyzing the amounts awarded by the chancellor as stated above, it is evident that Matilda would be financially able to pay her fees. Therefore, according to the standard as set forth in Watson, Matilda is not entitled to attorney's fees. Although the chancellor did not vocalize this standard in his opinion, we cannot find an abuse of discretion in the refusal to award attorney's fees to Matilda. For this reason, we affirm the chancellor's decision.
¶ 29. THE JUDGMENT OF THE MADISON COUNTY CHANCERY COURT IS AFFIRMED AS TO ISSUES ONE AND THREE; THE JUDGMENT OF THE MADISON COUNTY CHANCERY COURT IS REMANDED AS TO ISSUE TWO. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, AND THOMAS, JJ., CONCUR. PAYNE, J., CONCURRING IN PART, DISSENTING IN PART WITH SEPARATE WRITTEN OPINION. MYERS, J., DISSENTS WITHOUT WRITTEN OPINION.
PAYNE, J., concurring in part, dissenting in part:
¶ 30. I join the majority in the treatment of Issue I in affirming the chancellor's ruling; however, I would not reason that under Albright's "stability of the home environment and employment of parents" that David should be given credit, as the majority states, since he had been employed in the same job for sixteen years and Matilda had just begun her employment outside the home. Matilda's home environment and "employment as a housewife" was stable until September 1996 when the two were separated. The fact that David's employment was not affected and Matilda's employment status had just begun should not be credited to him under that Albright factor. In consideration of the totality of circumstances, I agree with the chancellor's outcome on this issue in spite of what I consider a mistake in this conclusion under the facts in this case.
¶ 31. I concur with the treatment of Issue II which remands for assessment of alimony, but I find disfavor with the judge's quoted statement which seems to indicate that he is punishing the wife by not awarding alimony. The Mississippi Supreme Court has stated that "adultery should not stand as an absolute bar to alimony, especially, we believe, when denial of alimony would render the wife destitute." Hammonds v. Hammonds, 597 So.2d 653, 655 (Miss.1992). This Court has also noted that "Alimony is not a punishment and should not be so used." Welch v. Welch, 755 So.2d 6 (¶ 31) (Miss. Ct.App.1999). Just as the awarding of alimony may not be used as punishment for an adulterous husband, by the same token, alimony is not to be withheld as punishment for similar action of the wife, even if it be proven. This aside, I do concur with the majority's decision to remand for assessment of alimony.
¶ 32. With Issue III, I must dissent from the majority's treatment of the attorney's fee issue. The majority quoted the chancellor as saying, "Matilda will have resources to pay her attorney upon receipt of her share of the division of the savings *1014 bond and/or the equity in the home." In the next paragraph the majority states, "In analyzing the amounts awarded by the chancellor as stated above, it is evident that Matilda would be financially able to pay her fees." (emphasis added).
¶ 33. The Mississippi Supreme Court has said that a wife with an annual income of $14,000 and non-marital assets of over $100,000 "should not be required to invade the corpus of her investment or to take from her own teacher's income to pay her attorney's fees under the facts in this case." Adams v. Adams, 591 So.2d 431, 435 (Miss.1991). If a wife should not have to invade the corpus of non-marital assets, it stands to reason that neither the fruits of her marriage nor those martial assets that had been equitably distributed to her should be depleted in order to pay attorney's fees. In Adams, the husband had about the same income as David in this case, but Matilda is much worse off than Sharron Adams, a teacher, even if Matilda were to be licensed and begin establishing herself as a hair stylist. From the record, it is obvious that at $727 a month Matilda can barely afford to take care of herself, much less pay attorney's fees. I do not agree with the majority's treatment of this issue.
¶ 34. I do not read Martin v. Martin, 566 So.2d 704 (Miss.1990), to stand for the proposition that regardless of how incapable one is of paying attorney's fees at the beginning of a domestic dispute, if she is granted anything monetarily and is therefore better off at the end of the proceeding that she is not entitled to even a portion of her attorney's fees. What Martin says in regard to attorney's fees is this:
[T]he lower court found that both parties were equally vested with the property, except for the 101 acres, where he determined that Nancy had a lesser interest. The respective income and ability to gain income were practically the same. Nancy did not attempt to demonstrate her inability to pay attorney's fees. If a party is financially able to pay her attorney, an award of attorney's fees is not appropriate.
Id. at 707 (emphasis added). Of course, unlike the Martins, Matilda has nothing like David's income, neither has she the ability to gain such income. Smith v. Smith, 614 So.2d 394 (Miss.1993), cited to Martin, but only as to the general rule of not awarding attorney's fees if the party is able to pay. In Smith, the court further said:
In Cheatham v. Cheatham, 537 So.2d 435 (Miss.1988), we held that the chancellor abused his discretion in awarding attorney's fees where there was insufficient evidence in the record to establish the wife's inability to pay. Patte [Smith] is college educated, physically capable of employment, and owns her own business. Nothing in the record indicates an inability to pay her own attorney's fees.
Smith, 614 So.2d at 398. In Smith, Patte Smith had a degree in landscape architecture and had worked as a graphic artist, and her case was unusual in several ways. Not only had Mrs. Smith waffled back and forth between her ex-husband's affection and that of her present husband, the court found that her threat to abort Smith's child if he did not give her what she wanted constituted cruel and inhuman treatment. Id. at 396. Nothing in that case was analogous to the facts in Matilda and David's case. As well, certainly was there nothing about attorney's fees to say that a person entitled to attorney's fees was disqualified from receiving them because she also received equitable distribution.
¶ 35. Another distinction I would make is that both Martin and Smith, which the majority cites on this issue, were decided prior to 1994 when Mississippi became established as an equitable distribution state. Thus, these cases do not necessarily give us the most accurate picture of financial awards as they occur at the present time.
¶ 36. Magee v. Magee, also cited by the majority, was handed down after equitable *1015 distribution principles were established. Magee v. Magee, 661 So.2d 1117 (Miss. 1995). Nonetheless, it still is not analogous to the instant case. In Magee, the wife "beat [her husband] to the bank" and had withdrawn enough funds from the joint savings and checking accounts to pay the attorney's fees, a fact not even remotely similar to the case of Matilda and David here. Id. at 1127.
¶ 37. Finding neither Magee, Smith, nor Martin applicable to the present case, I would remind the majority to examine those McKee factors stated in the majority opinion, specifically noting that Matilda does not have the relative financial ability to pay for her attorney. I respectfully dissent to the majority's failure to award attorney's fees to Matilda.