812 So.2d 998 (2001)
William Douglass ROBERTSON, Appellant,
v.
Debbie Gentry ROBERTSON, Appellee.
No. 2000-CA-00026-COA.
Court of Appeals of Mississippi.
January 16, 2001.
*999 M. Dave Harbour, Quitman, Attorney for Appellant.
Lawrence Primeaux, Meridian, Attorney for Appellee.
Before McMILLIN, C.J., LEE, and PAYNE, JJ.

Procedural History and Facts
PAYNE, J., for the Court:
¶ 1. The parties in this case obtained an irreconcilable differences divorce in the Lauderdale County Chancery Court, and a property settlement agreement was incorporated into the judgment of divorce. Provision was made in the agreement for child support, and for a change in the amount of child support on the pending event of the close of the company by which Doug was employed. When the company closed and Doug was placed on "protective status," as anticipated, Doug recalculated the amount of child support to fourteen percent of the adjusted gross income he then received. Doug supplied a copy of his check stub to Debbie when his income dropped so that she could see how he determined the new amount. About four months after being placed on protective status, the company paid Doug $70,000 as a buyout of their obligation to him and ended his protective status. Doug netted about $40,000 of the buyout amount. He then drew unemployment while he was seeking a new job. Doug continued to make child support and alimony payments in the amount figured when he was placed on protective status. He used the $40,000 to pay bills and live while he searched for a new job.
¶ 2. After learning of the payout, Debbie filed a motion for modification and to enforce judgment. The motion was heard on June 24 and October 5, 1999. The chancellor found Doug's 1998 child support obligation to be $11,381, which was fourteen percent of Doug's adjusted gross income including the payout. She found Doug in contempt for failing to transfer ownership of a life insurance policy to Debbie, and for not maintaining health insurance on their son, but also found that Doug had already purged himself of that contempt. The chancellor ordered the parties to submit a *1000 calculation of the difference between the amount she found to be Doug's obligation and the amount he had actually paid.
¶ 3. Doug filed a motion for new trial which was overruled. The court entered its judgment on December 9, 1999, adjudicating the amount of additional child support owed to be $6,659.81 plus interest. The court raised Doug's weekly child support obligation from $89.71 to $91.56. The court also assessed Doug with almost half of Debbie's attorney's fees, with interest. From that judgment Doug perfected this appeal.

Standard of Review
¶ 4. A chancellor's findings of fact will not be disturbed if substantial evidence supports those factual findings or unless the chancellor was manifestly wrong or clearly erroneous, or an erroneous legal standard was applied. Turpin v. Turpin, 699 So.2d 560, 564 (Miss.1997). As to matters of law, however, a different standard applies. In that case, our review is de novo, and if we determine that the chancellor applied an incorrect legal standard, we must reverse. Morreale v. Morreale, 646 So.2d 1264, 1267 (Miss.1994). On appeal, the court reviews all of the evidence in a light most favorable to the appellee and does not reverse unless the chancellor's decision on such facts is manifestly wrong or unsupported by substantial evidence. Rawson v. Buta, 609 So.2d 426, 429 (Miss.1992).

Issues and Discussion

1. IS AN AUTOMATICALLY ADJUSTING CHILD SUPPORT CLAUSE VALID WHERE TIED ONLY TO THE PAYER'S INCOME AND NO OTHER FACTOR AND WHERE THERE IS NO PROOF THAT THE CHILD'S NEEDS CHANGED OR INCREASED OR THAT THE SUPPORT RECEIVED FAILED TO MEET THE CHILD'S NEEDS?

2. DID THE TRIAL COURT ERR IN INCLUDING IN THE CALCULATION OF MR. ROBERTSON'S ADJUSTED GROSS INCOME THE ONE TIME, UNEXPECTED BUYOUT PAYMENT SINCE IT WAS NOT REASONABLY EXPECTED TO BE RECEIVED?
¶ 5. The main items of this appeal concern the section in the property settlement agreement providing for a recalculation of child support when Doug's employing company closed and he was placed on protective status, and whether the one-time buyout from Doug's employer should have been included in the calculation of adjusted gross income. The section from the property settlement agreement reads as follows:
2. Child Support.

A. Doug shall pay to Debbie the sum of $105.93 per week as child support for Wil, the first such payment being due on the 9th day of January 1998, and a like payment on Friday of each week thereafter until Wil is emancipated, or until further order of a court of competent jurisdiction, or until child support changes by operation [of] Paragraph 2B of this Agreement.
B. The amount of child support payable by Doug shall be adjusted to a set amount equal at that time to fourteen (14%) percent of Doug's adjusted gross income, as defined by law, which amount the parties are advised on the date of this Agreement shall be $387.00 per month, effective with the first child support payment due and payable after the closure of the Delco-Remy Meridian plant at which he is employed, if his active employment status is terminated *1001 at the time, and he is placed in protective status. Doug agrees that he will provide Debbie with a pay stub or other documentation of his gross pay, deductions and net pay as of that time.
Doug argues that, even though he agreed to this language, it is an illegal escalation clause tied only to his income, and therefore void. He cites Wing v. Wing, 549 So.2d 944, 947 (Miss.1989) in which the court stated:
Such automatic adjustment clauses should be tied to: (1) the inflation rate, (2) the non-custodial parent's increase or decrease in income, (3) the child's expenses, and (4) the custodial parent's separate income.... An automatic adjustment clause without regard to all of the above factors runs the risk of over emphasizing one side of the support equation. On the other hand, an increase in the non-custodial parent's income does not necessarily entitle the child to more support; nor does an income decrease necessarily signal inability to pay, as when the obligated parent has assets.
The court in Bruce v. Bruce, 687 So.2d 1199, 1202 (Miss.1996), said such clauses "must be tied" to these factors. In that case, Mrs. Bruce sought an order of contempt because Mr. Bruce did not pay a percentage of a bonus he received as child support. The court affirmed the chancellor's finding that the parties, in essence, created an escalation clause which was void because it was uncertain and indefinite with regard to escalation each year based on net pay.
¶ 6. Doug also cites Gillespie v. Gillespie, 594 So.2d 620, 623 (Miss.1992): "It matters not whether the clause is drafted and agreed upon by the parties in an Irreconcilable Differences divorce or is instituted by the trial court without the parties consent." The Gillespie court refused to allow the provision since it related to only one event and was not tied to the child's needs. Doug claims Gillespie is important to his cause for two reasons: (1) the clause in this case was tied to his income and no other factor, and (2) there is no record in the court below of any increase, or even a change, in the child's needs. When asked if she did not agree to allow Doug to change his child support based on any event other than change to protective status, Debbie stated, "I knew of no other event to be considered at the time." She further stated, "The child had no special needs that required consideration. That was based on, as I understood, the law to be."
¶ 7. The chancellor determined that the child support clause was ambiguous and subject to interpretation. The clause states that the amount of child support would change to a "set amount" when and if Doug was placed on protective status, effective with the first child support payment due after such event. The amount was to be fourteen percent of adjusted gross income Doug received after being placed on protective status. The chancellor stated in her opinion:
If "at that time" limits the calculation of child support to the first week that Doug went on protected status, then he owes nothing more than what he has paid. This interpretation, however, yields a grossly inequitable result, considering the fact that Doug reduced his child support obligation to $89.71 per week in a year in which he had a gross income in excess of $100,000. It allows calculation of child support base on "net pay" rather than "adjusted gross income as defined by law," the language contained in the agreement.
¶ 8. Even though Doug abided by the clause, the chancellor stated in her opinion that "no part of the $70,000 lump sum was *1002 paid as child support, nor was it factored into the payments made by Doug to Debbie for child support." However, it is undisputed that Doug continued to pay the fixed child support amount of $89.71 per week as child support after his protective status with Delco-Remy was terminated and he was unemployed. The chancellor found that Doug should not be held in contempt for not immediately paying Debbie a portion of the buyout money since "the relevant paragraph is subject to interpretation and the court does not find that Doug's interpretation of that provision is in contempt of this court."
¶ 9. The chancellor further stated that Doug's reduction of his child support obligation at the commencement of his protected status was based on his "net pay," not on his "adjusted gross income as defined by law." While a buy-out could certainly fall under Miss.Code Ann. § 43-19-101(3)(a) (Rev.1993) for determining adjusted gross income, that statute includes "all potential sources that may reasonably be expected to be available." The buyout was not offered to Doug until about four months after he was placed on protective status, and no indication is found in the record that anyone expected that source to be available when the property settlement agreement was prepared, or when Doug was placed on protective status. Debbie claims in her brief that at trial Doug insinuated that he knew his protective status would be terminated, raising the question of how much Doug knew but did not disclose in negotiations. According to the transcript, Doug was asked if it was foreseeable that Delco would terminate him or if he anticipated that. He answered in the affirmative, but nothing was asked about whether he anticipated a buyout. He, in fact, testified that the workers were already under protective status when Delco came up with the pay off, and that the two employees who did not accept the buyout were later terminated.
¶ 10. It is this Court's opinion that the property settlement agreement clause is not an escalation clause, but rather a one-time provision for a pending change in circumstances of Doug's employ. It was triggered only by the detailed event of his being placed on protective status and both parties testified that any further changes in child support would require a motion for modification.
¶ 11. Even though a buyout may properly be considered in the adjusted gross income if reasonably expected, the record contains no indication that this was reasonably expected, and it was certainly not a yearly event as a bonus may be. Doug cites Bruce v. Bruce, 687 So.2d 1199, 1201 (Miss.1996), "the statutory definition includes as gross income all potential sources that may reasonably be expected to be available." Doug points out, "a `bonus' may be properly considered part of a Payor's income for child support purposes when the Payor regularly receives the bonus." Alderson v. Morgan ex rel. Champion, 739 So.2d 465, 468 (Miss.Ct.App. 1999)(same bonus received in prior year).
¶ 12. Since Delco did not offer a buyout until after placing its employees on protective status for a couple of months, there is no basis for determining that it was reasonably expected to be available. However, the buyout did create a material change in circumstances which brings up the possibility of a modification of the property settlement agreement. Therefore, this cause is reversed and remanded for proceedings and consideration under the guidelines for a modification.

3. MAY A MODIFICATION OF CHILD SUPPORT, REQUIRING A MATERIAL CHANGE IN CIRCUMSTANCES, *1003 BE BASED UPON AN IMMATERIAL CHANGE?
¶ 13. Doug argues that the chancellor was wrong in modifying his child support payment from $89.71 to $91.56 per week because it was not a material change. He cites Shipley v. Ferguson, 638 So.2d 1295, 1297 (Miss.1994), and Morris v. Morris, 541 So.2d 1040, 1042-43 (Miss.1989), for the rule that child support provisions may only be modified when there has been a material or substantial change in circumstances of one of the parties. He also cites the factors from Caldwell v. Caldwell, 579 So.2d 543, 547 (Miss.1991), to be considered in determining whether a material change has taken place, which include:
(1) increased needs caused by advanced age and maturity of the child; (2) increase in expenses; (3) inflation factor; (4) the relative financial condition and earning capacity of the parties; (5) the health and special needs of the child, both physical and psychological; (6) the health and special medical needs of the parents, both physical and psychological; (7) the necessary living expenses of the payer; (8) the estimated amount of income taxes the respective parties must pay on their incomes; (9) the free use of a residence, furnishings, and automobile and (10) such other facts and circumstances that bear on the support subject shown by evidence.
¶ 14. Materiality can be a matter of perspective. While this change may not be considered material in most circumstances, it is undisputedly fourteen percent of Doug's adjusted gross income. If allowing modification on this amount of change is error, it is harmless error and this Court will not disturb the chancellor's decision. The increase in child support is affirmed.

4. IS THE EXTREME SANCTION OF PRECLUDING A WITNESS FROM TESTIFYING PROPER WHEN THE IDENTITY OF THE WITNESS AND SUBJECT OF TESTIMONY ARE DISCLOSED IN DISCOVERY RESPONSES AND THE OTHER PARTY DOES NOT BRING THE DISPUTE TO THE ATTENTION OF THE COURT UNTIL THE WITNESS IS CALLED TO TESTIFY?
¶ 15. In response to interrogatories, Doug listed his former attorney, Polly Covington, as an expert witness who would offer testimony about the determination of the amount of child support, that the parties had full knowledge of the imminent Delco closure, and the intent and understanding and interpretation of Paragraph 2 of the property settlement agreement. Doug did not further list Covington as a possible fact or occurrence witness, but rather responded that his responses and allegations in his pleadings were what he would testify to, and "any specific statement concerning the other witness' knowledge, I object, You should ask them."
¶ 16. Doug argues that the chancellor's exclusion of Covington's testimony was an extreme sanction for a discovery violation. He cites Mississippi Power & Light Co. v. Lumpkin, 725 So.2d 721, 733-34 (Miss. 1998) where the court stated:
We observed in McCollum v. Franklin... that excluding evidence for a transgression in discovery is an extreme measure. Before imposing such a sanction a trial court should consider the explanation for the transgression, the importance of the testimony, the need for time to prepare to meet the testimony and the possibility of a continuance.... The first consideration involves a determination whether the failure was deliberate, seriously negligent or an excusable oversight. The second consideration involves and assessment of harm to the proponent of the testimony. The third and fourth considerations involve an assessment *1004 of the prejudice to the opponent of the evidence, the possibility of alternatives to cure that harm and the effect on the orderly proceedings of the court.
Doug further relies on Clark v. Mississippi Power Co., 372 So.2d 1077, 1078 (Miss. 1979) for the proposition that:
Lower courts should be cautious in either dismissing a suit or pleadings or refusing to permit testimony.... The reason for this is obvious. Courts are courts of justice not of form. The parties should not be penalized for any procedural failure that may be handled without doing violence to court procedures.
¶ 17. At the end of the first day of trial, June 24, 1999, the parties' attorneys met in chambers to discuss the possibility that Doug may call Covington as a fact witness. Doug's attorney notified Debbie's attorney on July 2, 1999, that he intended to call Covington as a witness when the trial continued, which was not until October 5, 1999. Debbie filed a motion for protective order on September 27, 1999, claiming that Covington was a surprise fact witness as she had been disclosed only as an expert witness. This was not brought for hearing until the day the trial resumed. Doug's attorney did not object to the motion being heard then, nor did he raise any objections as to timeliness. Debbie, therefore, contends that this court should not consider Doug's argument on this point.
¶ 18. The chancellor excluded Covington's testimony stating that as chancellor she has expert knowledge of appropriate child support and interpretation of language contained in property settlement agreements. Therefore, the chancellor found that Covington's testimony would not be necessary to assist the court in determination of any of those issues. The chancellor further found that Debbie would be at a substantial disadvantage because the identification of Covington as an expert did not give Debbie adequate information that Covington would be called as a fact witness, and Debbie's only source of evidence to defend against Covington's testimony would be Debbie's own attorney. Since Mississippi Rules of Professional Conduct 3.7 prohibits an attorney from being both a witness and counsel in the same case, the prejudice would be that Debbie would have to hire a new attorney before the trial could continue or forego her defense which could be proven only by her attorney of record as a witness.
¶ 19. As trier of fact with expertise and knowledge in child support and interpretation of language in property settlement agreements, the chancellor did not commit error in excluding Covington's testimony as an unnecessary expert. Further, the chancellor considered not only Doug's failure to disclose Covington as a fact witness until after trial began and the importance of the testimony in assisting her as trier of fact, but also the prejudice that would be caused to Debbie if Covington were allowed to testify. Therefore, the chancellor's decision to exclude Covington's testimony is affirmed.

5. DID THE TRIAL COURT ERR IN AWARDING $1,200 ATTORNEY'S FEE TO MS. ROBERTSON WHEN SHE HAD ABILITY TO PAY HER OWN ATTORNEY'S FEE AND MR. ROBERTSON DID NOT HAVE THE ABILITY TO PAY THE FEE?
¶ 20. Doug was ordered to pay $1,200 of Debbie's attorney's fees, which was almost half. Doug contends that when the trial began in June, 1999, Debbie's monthly adjusted gross income was $2,747.03 and monthly expenses of $2,575. Debbie also had between $6,800 and $8,000 in savings and $10,000 in investments. Doug's monthly adjusted gross income was *1005 $2,834.03 and monthly expenses of $4,611.51. He had $300 in checking and no savings or investments. He testified that the money received from the buyout had been used to pay off various bills and living expenses. Doug argues under Martin v. Martin, 566 So.2d 704, 707 (Miss. 1990), that "if a party is able to pay attorney fees, [the] award of attorney's fees is not appropriate." He contends that Debbie had the ability to pay her attorney's fees and he did not have the ability to pay. Doug did not argue the reasonableness of the amount of attorney's fees.
¶ 21. The chancellor found that certain portions of this litigation were made necessary by Doug's conduct and portions were made necessary by the need to interpret and modify the parties' property settlement agreement. She found Doug in contempt for not signing over his life insurance policy to Debbie until after the action was initiated. The chancellor also found Doug in contempt of the order to keep insurance coverage on the minor child, even though she acknowledged it was because of his erroneous assumption that his insurance coverage would not terminate with the buyout. The chancellor further found that Doug had purged himself of the contempt.
¶ 22. Debbie argues that since she prevailed on the contempt allegations of failure to sign over life insurance and maintain insurance on their child, she is entitled to an award of attorney's fees, citing Lahmann v. Hallmon, 722 So.2d 614, 623 (Miss.1998), and Varner v. Varner 666 So.2d 493, 498 (Miss.1995), as authority for her position. Debbie also argues that because she needed to preserve her savings for medical expenses and other necessities and unforeseen expenses, she was unable to pay her attorney's fees. The Mississippi Supreme Court in Magee v. Magee, 661 So.2d 1117, 1127 (Miss.1995), stated:
The law in Mississippi with respect to attorney's fees is found in Smith v. Smith, 614 So.2d 394, 398 (Miss.1993), where we stated: As with alimony, the determination of attorney's fees is largely within the sound discretion of the chancellor. Martin v. Martin, 566 So.2d 704 (Miss.1990); Devereaux v. Devereaux, 493 So.2d 1310 (Miss.1986); Kergosien v. Kergosien, 471 So.2d 1206 (Miss.1985). We are "reluctant to disturb a chancellor's discretionary determination whether or not to award attorney fees and of the amount of [any] award." Geiger v. Geiger, 530 So.2d 185, 187 (Miss.1988).
The chancellor was not clearly in error in awarding attorney fees since Doug was in contempt by failing to sign over the life insurance to Debbie and failing maintain insurance on their child as ordered. The decision of the chancellor in awarding attorney fees to Debbie is affirmed.
¶ 23. THE JUDGMENT OF THE LAUDERDALE COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS. COSTS OF THIS APPEAL ARE ASSESSED FIFTY PERCENT AGAINST THE APPELLANT AND FIFTY PERCENT AGAINST THE APPELLEE.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., LEE, MYERS, and THOMAS, JJ., concur. BRIDGES, J., dissents with separate written opinion. IRVING, J., dissents in part without written opinion. CHANDLER, J., not participating.
BRIDGES, J., dissenting:
¶ 24. With respect to my colleagues in the majority, I would reverse and render this case without prejudice, concluding *1006 that the chancellor and the majority erred in their treatment of several of the issues in this case.
¶ 25. The first issue I dissent to is the first one raised by the parties in this case. This issue deals with whether or not an automatically adjusting child support clause is valid when tied only to the payer's income and no other factor and where there is no proof that the child's need changed or increased or that the support received failed to meet the child's needs. The child support agreement in question in this case reads as follows:
A. Doug shall pay to Debbie the sum of $105.93 per week as child support for Wil, the first such payment being due on the 9th day of January, 1998, and a like payment on Friday of each week thereafter until Wil is emancipated, or until further order of a court of competent jurisdiction, or until child support changes by operation of Paragraph 2B of this Agreement.
B. The amount of child support payable by Doug shall be adjusted to a set amount equal at that time to fourteen (14%) percent of Doug's adjusted gross income, as defined by law, which amount the parties are advised on the date of this Agreement shall be $387.00 per month, effective with the first child support payment due and payable after the closure of the Delco-Remy Meridian plant at which he is employed, if his active employment status is terminated at that time, and he is placed in protective status. Doug agrees that he will provide Debbie with a pay stub or other documentation of his gross pay, deductions and net pay as of this time.
In her order, the chancellor held the child support clause in this case was open to interpretation. She further stated that the term "at that time" should not be held to the interpretation that it would allow the modification of Doug's child support in only one instance. The chancellor felt such an interpretation would be inequitable. Thus, after Doug's support had already been modified once through the use of this clause, the chancellor held the amount of child support Doug pays should be modified to include 14% of the lump sum payoff.
¶ 26. The majority in this case believes the property settlement clause is a one time provision which was dependent upon an upcoming change in circumstances, namely Doug's loss of employment. They point out that the clause was only to be triggered one time in certain circumstances, and any further modifications would require a motion for modification. They then reverse and remand for proceedings to determine whether a modification should have been awarded.
¶ 27. I dissent here because I feel the child support clause itself is a void escalation clause. Whether the clause could be used to modify child support more than once, as the chancellor held, or one time only, as the majority believes, this clause is still an escalation clause. The law regarding escalation clauses is quite clear. An escalation clause is a clause put into a divorce settlement to prevent litigation by allowing the amount of child support to change depending upon certain factors. Tedford v. Dempsey, 437 So.2d 410, 419 (Miss.1983). An escalation clause is enforceable only if it is associated with the following factors: the inflation rate, the non-custodial parent's increase or decrease in income, the child's expenses, and the custodial parent's separate income. Bruce v. Bruce, 687 So.2d 1199, 1202 (Miss.1996). Gillespie v. Gillespie, 594 So.2d 620, 623 (Miss.1992). Wing v. Wing, 549 So.2d 944, 947 (Miss.1989). The escalation clause in this case was only associated with changes in the income of the non-custodial parent. *1007 Because the escalation clause in this case is only tied to one of the necessary factors it is therefore unenforceable. Even though the parties agreed on the property settlement clause when the original divorce decree was entered, it is still void and should be declared as such.
¶ 28. The majority believes this clause is a one time provision for a pending change. Though it may be a one time provision, the clause still changes the amount of child support to be paid without benefit of a trial, thus making it unnecessary for the appellee to prove a material change of circumstances. Whether the change is a one time occurrence or not, the clause is still an escalation clause. The chancellor's treatment of the clause supports the view that it is an escalation clause because the chancellor used this clause as the basis to change the child support amount a second time, thus using the clause for the purpose it was intended. However, the chancellor failed to recognize that the clause itself was legally defective and should have been considered void.
¶ 29. The majority chose to reverse and remand this issue to determine if a material change of circumstances had occurred. I think the more proper approach would have been to reverse the chancellor's holding on this issue without prejudice to the issue of whether a material change had occurred due to the lump sum, and then let the parties seek out the appropriate remedies rather than remanding for them. This issue does not concern a material change of circumstances and thus should not be remanded to address an issue it does not concern.
¶ 30. The second reason I must dissent is the majority's treatment of the issue of whether a modification of child support, requiring a material change of circumstances, may be based upon an immaterial change. The chancellor ordered the amount of child support the appellant must pay modified and increased from $89.71 per week to $91.56 per week. This is a total change of $1.85. She based this decision on the appellant's earnings at his new job and the earnings of the appellee which had not changed. The majority affirmed the chancellor's decision claiming materiality is a matter of perspective and that if this decision was in error it was harmless error.
¶ 31. There is a long line of precedent which requires a party must prove there has been "a substantial or material change in the circumstances of one or more of the interested parties: the father, the mother, and the child or children, arising subsequently to the entry of the decree to be modified" to be awarded a modification of child support. Lawrence v. Lawrence, 574 So.2d 1376, 1380 (Miss.1991) (quoting Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983)). Certain factors should be considered in determining whether a material change has occurred. Sumrall v. Munguia, 757 So.2d 279 (¶ 14) (Miss.2000). Such things as (1) increased needs of the child caused by advance in age and maturity, (2) increase in expenses, (3) inflation, relative financial condition and earning capacity of both parents, (4) health and special needs of the child, (5) health of the parents, (6) living expenses of the father, (7) income taxes the parties must pay on their income, (8) free use of a residence, car, furnishings, and (9) other facts and circumstances that bear on support. Lawrence, 574 So.2d at 1376 (quoting Caldwell v. Caldwell, 579 So.2d 543, 547 (Miss. 1991)). It should also be noted "that only changes occurring after the original decree and not reasonably anticipated by the parties at the time of the agreement should be considered in the modification of child support." Shipley v. Ferguson, 638 So.2d 1295, 1298 (Miss.1994).
*1008 ¶ 32. The only one of the above factors the chancellor based her decision to modify child support on is the slight change in the father's income due to his new job. This change can hardly be considered a material change. There was no change of circumstances to either the child or the mother in this case. Because the father had secured new employment after his employment at Delco-Remy ended, the chancellor ordered his child support changed from $89.71 to $91.56 per week, noting that the new figure would represent 14% of his salary. One dollar and fifty six cents can hardly be considered a material change. Yes, it is 14% of the appellant's new wage; however, as stated above the child support clause which makes reference to 14% is a void escalation clause and as it is void it should not influence this Court's decision. The chancellor made it clear this modification had to do with the father's new employment and was not based upon the lump sum buyout of his protected status. Because of this, it cannot be argued that the lump sum settlement was the material change. When considering the relative financial condition of the father, his position had relatively changed very little as compared to the time in which he was unemployed, and the fact that the award was only $1.85 more than it had been is proof of this. There was no substantial change that occurred in this case.
¶ 33. Also, it can hardly be argued that the two parties involved in this divorce could not reasonably anticipate the appellant seeking new employment. As stated above, "only changes occurring after the original decree and not reasonably anticipated by the parties at the time of the agreement should be considered in the modification of child support." Shipley, 638 So.2d at 1298. If the parties to this suit were able to anticipate that the appellant stood to lose his job, then it is reasonable to anticipate that at some point he would seek new employment. Because of this, the fact that the father secured new employment cannot operate as a basis for a material change due to the fact that it could be reasonably anticipated. In regard to the majority's statement that if this is error than it is harmless error, in my opinion, the misapplication of the law should never be considered harmless error. For these reasons, I dissent to the majority's treatment of this issue.
¶ 34. Finally, I dissent to the majority's treatment of the issue regarding whether the trial court erred in awarding $1,200 attorney's fees to Ms. Robertson when she had the ability to pay her own attorney's fees and Mr. Robertson did not have the ability to pay the fee. The chancellor noted in her order that Ms. Robertson asked for Mr. Robertson to be made to pay all of her attorney's fees, which totaled $2,300. The chancellor awarded attorney's fees to Ms. Robertson in the amount of $1,200 noting that portions of this litigation were made necessary by Mr. Robertson's conduct, but that this litigation was also needed to interpret and modify the parties' property settlement agreement.
¶ 35. In the majority's opinion it is pointed out that Mr. Robertson was in contempt of court for failing to maintain health insurance for his son, and that because of this contempt, Ms. Robertson is entitled to attorney's fees. This is the point upon which the majority bases its affirmance of the chancellor's order. The majority cites two cases, Varner v. Varner, 666 So.2d 493 (Miss.1995), and Lahmann v. Hallmon, 722 So.2d 614 (Miss.1998). The majority claims these cases stand for the position that when the chancellor held the appellant in contempt the appellee is automatically entitled to attorney's fees. The majority is mis-quoting the above two cases. Varner and Lahmann both state that when a party is held in contempt, it makes the other party eligible for attorney's fees, not entitled to attorney's fees. *1009 Varner, 666 So.2d at 498. Lahmann, 722 So.2d 614 (¶ 34). In fact this Court has stated "there is case law for the proposition that attorney's fees may be awarded in conjunction with the successful prosecution of a contempt action", the key word being "may". Young v. Deaton, 766 So.2d 819, (¶ 11) (Miss.Ct.App.2000). This causes this judge to believe being held in contempt does not automatically give the other party the right to attorney's fees, but it requires the chancellor to then decide if attorney's fees should be given. It should also be noted the chancellor in this case did not make reference to Mr. Robertson's contempt when ordering he pay Ms. Robertson's attorney's fees. Since the contempt charge only made Ms. Robertson eligible for attorney's fees, and the chancellor awarded attorney's fees not on the basis of contempt, then it next becomes necessary to determine if an award of attorney's fees was warranted in this case. In determining whether an award of attorney's fees should be given, it is important to remember several things. First of all, "[i]f a party is financially able to pay her attorney, an award of attorney's fees is not appropriate." Martin v. Martin, 566 So.2d 704, 707 (Miss.1990). Also, in considering whether or not to award attorney's fees, a chancellor must consider several factors such as "a sum sufficient to secure a competent attorney; the relative financial ability of the parties; the skill and standing of the attorney employed; the nature of the case and novelty and difficulty of the questions at issue; the degree of responsibility involved in the management of the cause; the time and labor required; the usual and customary charge in the community; and preclusion of other employment by the attorney due to the acceptance of the case." Varner, 666 So.2d at 498. It must also be remembered that the attorney's fees in child support cases are largely a matter of the chancellor's discretion. Id. at 498.
¶ 36. I feel the judge was in error granting attorney's fees because Ms. Robertson was financially able to pay for her attorney. In her testimony, Ms. Robertson claimed she was unable to pay her attorney, but I feel she failed to prove she could not pay her attorney. After review of the relative financial condition of the parties, and the strong rule set out in Martin, it becomes quite apparent that Ms. Robertson is in much better financial shape than Mr. Robertson. Mr. Robertson has less money in both his checking and savings accounts than Ms. Robertson has in her accounts. In addition, Mr. Robertson's monthly expenses exceed his monthly income while Ms. Robertson's expenses do not exceed her monthly income. Ms. Robertson claims she should not be required to pay attorney's fees because she must be able to preserve that money to pay any unexpected medical bills. This argument ignores the fact that the child is covered by health insurance.
¶ 37. Now it is true, this court is to grant a great deal of deference to the trial court's decisions, but we are not required to do so in situations where the lower court has misapplied the law. I believe the chancellor in this case erred by not applying the rule stated in the Martin case, which prohibits the grant of attorney's fees to a party who is financially able to pay those fees. Martin, 566 So.2d at 707. Ms. Robertson is able to pay her attorney's fees. It is entirely reasonable to think that a person may have to dip into her savings to pay her attorney when she chooses to go to trial. For this reason, I would hold that the chancellor erred by awarding attorney's fees to Ms. Robertson. Therefore, I respectfully dissent.